JOHN H. GRAHAM *vs.* CITY OF ALBERT LEA.

Argued Dec. 21, 1891. Decided Jan. 21, 1892.

Sidewalk—Duty of City to Keep in Repair.—If a municipal corporation knowingly permits a way or walk constructed upon one of its streets by a private person, and designed for the use of pedestrians, to remain and to be so used, the authorities by their official acts inviting and inducing such use, the duty devolves upon the corporation to keep the way in proper repair as a sidewalk; and it is of no consequence that such way or walk was built of earth, instead of the usual materials.

Other unimportant matters considered and disposed of.

Appeal by defendant city of Albert Lea from an order of the district court of Freeborn county, *Farmer*, J., made August 10, 1891, refusing a new trial.

Action by John H. Graham against the city of Albert Lea to recover damages for personal injuries received about half past 7 o'clock in the evening, October 14, 1890, while walking east on the south side of Clark street, in the westerly part of that city. The issues were tried May 20, 1891. Plaintiff had a verdict for $4,000. The city charter is Sp. Laws 1889, ch. 10, p. 294. The assignments of error mentioned near the end of the opinion were as follows:

(4) The record shows that plaintiff was guilty of negligence which contributed to the injury.

(5) The verdict of the jury was excessive, and was the result of prejudice and passion.

(6) The court erred in submitting to the jury the question of whether the place of the alleged injury was a sidewalk.

(7) The court erred in charging that, in determining the question whether the place in controversy was a sidewalk, the jury might consider whether Mr. Morin, in dedicating this street and building this sidewalk, designed it as a sidewalk, and it was dedicated to the public as a sidewalk.

(8) The verdict was contrary to the charge of the court that if

the jury find there was a walk four (4) feet wide, in good repair, at the time of the accident, then plaintiff cannot recover.

*W. N. Crane* and *Robert D. Russell,* for appellant.

The place at which the accident occurred is not a sidewalk for the maintenance and repair of which, as such, the city is responsible. It is not claimed that the city has ever done any work itself, or through its officers, to build or construct a walk at the place in controversy. The view of the court below was, if the owner left his embankment in such shape that the public could walk over it and did walk over it, then he dedicated it to the city for a sidewalk, the public accepted it, and the city became responsible for it as a sidewalk, no matter how it was made, or the material of which it was made, or that it was simply the hill partly cut down, and no matter what the provisions of the charter or ordinances were with reference to sidewalks. This was error.

One of the limitations in the charter of Albert Lea is that no action shall be maintained for any insufficiency of the ground where the walks are usually constructed, where no walk has been built. It reads as follows: "Nor shall any such action be maintained for any defect in any street until the same shall have been graded and open to travel, nor for any insufficiency of the ground where the sidewalks are usually constructed when no sidewalk is built. Sp. Laws 1889, ch. 10, subch. 6, § 9, p. 321. Similar provisions are found in the charters of other cities of the state, but no case has been before this court involving this provision. The court below recognized the force of the provision, and said there would be no question in this case if this ground where this sidewalk was claimed to be built had been left in its native and original form. In such a case the limitation of this statute would apply, and if the pedestrian had wandered up over it, and had got into the hole and been injured, he would say that this limitation would apply, and that such a plaintiff could not recover. *City of St. Paul* v. *Seitz,* 3 Minn. 297, (Gil. 205;) Dill. Mun. Corp. (4th Ed.) § 94; *Attorney General* v. *City of Boston,* 142 Mass. 200.; Morrill, City Neg. 84; *Saulsbury* v. *Ithaca,* 24 Hun, 12, 94 N. Y. 27; *Hines* v. *City of Lockport,* 50 N. Y. 236; *City of Lansing* v. *Toolan,* 37 Mich. 152; *Darling* v. *City of Bangor,* 68 Me. 108; *City*

of *Marquette* v. *Cleary*, 37 Mich. 296; *Goeltz* v. *Town of Ashland*, 75 Wis. 642.

The negligence of the plaintiff contributed to the injury. He knew the condition of the locality as well as any one. There was a light 80 feet ahead of him right in front of the pathway. He was walking at a pretty good gait when he fell, and was talking to Jerry Rowan, who was with him. No witness puts the washing away of the earth at more than two feet from the outside. *City of Chicago* v. *Bixby*, 84 Ill. 82; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Forker* v. *Sandy Lake Borough*, 130 Pa. St. 123.

Walking hastily or negligently, or knowing of a defect and being able to avoid it by taking the other side of the street, constitutes a bar to recovery. *Lovenguth* v. *Bloomington*, 71 Ill. 238. The walking in an absent-minded, inattentive, negligent manner, and so stumbling over an obstruction which a prudent person could have avoided, is a bar. *Vicksburg* v. *Hennessy*, 54 Miss. 391; Morrill, City Neg. 134.

The verdict is excessive, and would not have been rendered except for the passion and prejudice of the jury. It is true that the amount of damages in a case of this character is largely in the discretion of the jury, yet that discretion must be exercised with prudence. The damages are merely compensatory. *Gunderson* v. *Northwestern Elevator Co.*, 47 Minn. 161; *O'Malley* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 289; *Hutchins* v. *St. Paul, M. & M. Ry. Co.*, 44 Minn. 5.

*Lovely & Morgan*, for respondent.

It was not essential that the city council should have formally adopted the sidewalk in question to render the city liable for injuries caused by its defective condition. The place of the injury was within the limits of a public street. The street had been graded at the particular spot where the plaintiff was hurt. Such sidewalk had long been extensively used and traveled by the public. The officials of the city had built and connected it on either end with plank cross walks at grade, thus inviting the public to use it for sidewalk purposes. This was sufficient to show that it was a legal sidewalk. *Shartle* v. *City of Minneapolis*, 17 Minn. 308, (Gil. 284;) *Lindholm* v. *City of St. Paul*, 19 Minn. 245, (Gil. 204;) *Furnell* v. *City of St. Paul*, 20 Minn. 117, (Gil. 101;) *Estelle* v. *Town of Lake Crystal*, 27

Minn. 243; *Bohen* v. *City of Waseca*, 32 Minn. 176; *Moore* v. *City of Minneapolis*, 19 Minn. 300, (Gil. 258;) *Cleveland* v. *City of St. Paul*, 18 Minn. 279, (Gil. 255;) *Young* v. *Waterville*, 39 Minn. 196.

Municipal corporations are nowhere limited to the use of wood in building a sidewalk, but may adopt any suitable substance for that purpose. 2 Dill. Mun. Corp. § 796, (635;) *Burnham* v. *City of Chicago*, 24 Ill. 496; *Burlington & M. R. R. Co.* v. *Spearman*, 12 Iowa, 112; *O'Leary* v. *Sloo*, 7 La. Ann. 25; *In re Phillips*, 60 N. Y. 16.

Defendant knew nothing of the defective condition of the walk at the time he passed over it, which was at night, when the use of his eyes would have been of no avail.

COLLINS, J. This was an action brought to recover for personal injuries received in the year 1890 in front of what is called the Morin block or tract of land, on the southerly side of Clark street, in the city of Albert Lea. On the east of this block is Adams street, on the west is Grove, both crossing Clark at right angles, about 300 feet apart. The street last mentioned was brought to grade by the street commissioner in 1886, the cut at the point in question being several feet in depth, and at the same time a plank walk was laid upon its northerly side. Since then it has been one of the main thoroughfares of the city. No plank walk was laid in front of the Morin property, but its owner, Mr. Morin, who was then an alderman, and as such had charge of the grading, employed the street commissioner to plow a few furrows on top of the bank, so that it might be terraced down, and a more convenient way made for pedestrians. Morin then, at his own expense, cut down and leveled off a walk about eight feet wide, surfaced it with gravel, and, with a slope at each end, brought it down to conform with the grade of the three streets before mentioned. The city then constructed cross walks over Adams street from the east end, and over Clark from the west end, of the walk so built by Morin, so that it was given the appearance of a continuous way or walk for foot passengers, and it was so used for more than four years before plaintiff was injured. His injuries, inflicted in the nighttime, were caused by stepping into a hole which had first been made by heavy rains, at a point where the walk was about seven feet above the street surface. The principal contention of the appellant

city is that the testimony failed to establish the existence of a side-walk in front of the Morin property, or, if there was such a walk, that it was not one for the repair or maintenance of which it was respon-sible in any degree.   The nature of the way has been partly described. From Adams street, going westerly, the ascent was gradual towards the center of the block to the highest point, and thence the descent was easy to Grove street.   The surface was leveled off to a width of some eight feet, and covered with gravel, that it might be walked upon with less difficulty.   Above it, from one to three feet, was the surface of the abutting premises used by Mr. Morin for residence purposes. At each end of this open way he had caused it to be brought down gradually to the street grades, and over the streets on each side cross walks of plank had been put in by the authorities so as to connect the graveled walk with plank sidewalks built by order of the city council, thus giving to it the appearance of being a part of the system. In this manner the public had been invited and induced to use, and for more than four years prior to the accident which befell the re-spondent had used, this place as a public thoroughfare, as a sidewalk. This word "sidewalk," as used in this country, does not mean a walk or way constructed of any particular kind of material, or in any spe-cial manner, but ordinarily it is used for the purpose of designating that part of the street of a municipality which has been set apart and is used for pedestrians, as distinguished from that portion set apart and used for animals and vehicles.   The right to regulate the width, materials, and construction of all sidewalks within the city limits was conferred upon the council by the charter, and with this provision came the right to accept and adopt a walk made of earth.   It could make no possible difference to the public, nor could it affect the rights of individuals, that materials more generally used did not enter into its construction.   The city authorities so acted in reference to this walk as to hold it out to the people as a public thoroughfare, and therefore assumed the duty of keeping it in repair.   It was placed in the street to be used by the public as a part of it, and thereupon it became incumbent upon the corporation permitting it to remain, and to be so used, to see that it was in a safe condition for such use.

The case, on this feature, is not essentially different from *Estelle*

v. *Village of Lake Crystal*, 27 Minn. 243, (6 N. W. Rep. 775.) And as to the general proposition that where a municipality permits a private citizen to build a sidewalk in front of his premises, and the same to be used by the public, the duty devolves upon the corporation to see that it is kept in proper repair. See *City of Champaign* v. *McInnis*, 26 Ill. App. 338; *Weare* v. *Fitchburg*, 110 Mass. 334; *Saulsbury* v. *Village of Ithaca*, 94 N. Y. 27; *Potter* v. *Castleton*, 53 Vt. 435; *Foxworthy* v. *City of Hastings*, 25 Neb. 133, (41 N. W. Rep. 132;) *Orme* v. *Richmond*, 79 Va. 86. The rule of law laid down in the cases above cited has not been seriously questioned by appellant, but it urges that no liability to plaintiff exists because of that portion of its charter which provides that actions shall not be maintained against it on account of injuries received in consequence of "any insufficiency on the ground where the sidewalks are usually constructed, where no sidewalk is built." This language is not very lucid, but, from what has been stated, it is evident that the facts to which the same might be applied are not now before us; for it was established upon the trial of this action that a way of proper width, and of material which served the purpose, had been built for sidewalk uses; that the city authorities had recognized its proposed use by connecting it with other sidewalks; and that with their knowledge it had been more or less used as a sidewalk by footmen having occasion to go that way for a number of years. It is further urged that plaintiff should not be allowed to recover because guilty of contributory negligence, and also because the walk at the place where he was hurt was shown to be more than four feet wide outside and independently of that part which had been washed away. There was no testimony on which could be founded the assertion that plaintiff contributed to defendant's negligence when it failed to seasonably repair the walk in question; and in reference to the other point, in addition to the suggestion that the argument of counsel is based upon the assumption that the ordinance prescribed the width of walks upon Clark street at not *more* than four feet, when, in fact, it was ordained that sidewalks upon that particular street should not be *less* than four feet wide, it may be said that it would be very remarkable if the duty of municipal corporations as to its sidewalks could be discharged by proper

care and diligence with respect to a part lengthwise, leaving the remainder wholly uncared for and unrepaired. We do not think that the assignments of error numbered from four (4) to eight (8) inclusive, and those relating to the rulings of the court when receiving the plaintiff's proofs, need to be discussed. There was no prejudicial error in any of the rulings. The fifth (5) assignment of error goes to appellant's claim that the verdict against it was excessive in amount. We are of the opinion that it was large, but cannot say that it was not justified by the testimony of the medical men who were sworn in his behalf.

Order affirmed.

(Opinion published 50 N. W. Rep. 1108.)