CENTRAL LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant, v. CITY OF DES MOINES et al., Appellees.

WORDS AND PHRASES: Sidewalks. A sidewalk is a part of the
1  street expressly reserved for pedestrians, and constructed differently from other portions of the street.

STATUTES: Construction—Delegation of Authority to Cities and
2  Towns. The legislature has plenary power over the streets and highways, and may delegate such authority to the cities and towns within which the streets are located; and the power to control, improve, and repair the streets is conferred on cities and towns, under Section 753, Code, 1897, and Sections 751 and 792, Code Supp., 1913, without any prescription as to the manner of so doing.

MUNICIPAL CORPORATIONS: Powers—Jurisdiction of Courts—
3  Arbitrary and Oppressive Acts of City Council. Where certain powers are conferred on the city council, and the manner or mode of performance has not been directed by the legislature, such manner or mode ought not to be arbitrary or oppressive; and when this is attempted, the courts may interfere, and prevent an unreasonable course on the part of the city in carrying out what the city council has enacted.

MUNICIPAL CORPORATIONS: Powers—Improper Mode or Manner of Performance of Powers. Courts cannot interfere with the acts of a city under a power clearly conferred by the legislature, but may interfere to prevent the arbitrary and unreasonable or oppressive mode or manner of performing what the city council, in its legislative discretion, may order or require.

MUNICIPAL CORPORATIONS: Powers—Arbitrary and Unreasonable Acts—Reducing Width of Sidewalks. Allegations of a petition that the city council acted arbitrarily and unreasonably in passing a resolution reducing the sidewalks to five feet in front of plaintiff's office building held insufficient to justify the interference of the courts, the petition failing to show that the street was not similarly narrowed on other portions of the street other than opposite plaintiff's building, and that the width of the street may not have been apportioned between pedestrians and the general traffic in strict conformity to the necessities of each; and *held* that the facts alleged in the petition were not sufficient to show that the acts complained of were arbitrary, unreasonable, and oppressive, or to overcome the presumption that the city council had not acted otherwise than legally and in good faith.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

MARCH 11, 1919.

SUIT in equity to enjoin the defendant city from reducing the width of the sidewalk abutting upon plaintiff's property. There was a demurrer to the petition, which was sustained. Plaintiff standing on its petition, judgment was entered dismissing the same. Plaintiff appeals.—*Affirmed.*

*Carr, Carr & Evans,* for appellant.

*H. W. Byers, Reson S. Jones, Cole McMartin,* and *C. A. Weaver,* for appellees.

LADD, C. J.—Plaintiff owns Lot 8, Block A, Commissioners' Addition to Fort Des Moines, Iowa, being located at the corner of Seventh Street and Grand Avenue in Des

Moines, with frontage of 132 feet on Grand Avenue and 67 feet on Seventh Street. Seventh Street runs north and south, and Grand Avenue, east and west. The latter street is 66 feet in width. Upon this lot there is an eight-story brick building, with basement, covering the entire lot, used as the home office of the plaintiff corporation, and with offices for rent. The building is alleged to be fitted and furnished as a modern office building, with elevators, appropriate heating apparatus, tiled floors, etc., and the principal entrance thereto is on Grand Avenue, at the center of its frontage thereon. This entrance affords access to the elevator, with two cars, each of which carries to the various floors more than 2,000 persons, during the day. Rooms in the building are being rented, in which from 350 to 400 persons are housed. The portion of Grand Avenue lying between the curbs and used as a roadway for vehicles is 42 feet in width, and on each side of the street, next to the lot line, is a sidewalk 12 feet in width. The city council of Des Moines, on June 5, 1916, passed a resolution changing the width of that portion of the street used as a roadway to 56 feet between the curbs, leaving the portion of the street to be used as a sidewalk on the south side thereof, next the building, but 5 feet in width; and it is proposing to tear up and remove all the sidewalk north of plaintiff's building, where the same fronts Grand Avenue, except 5 feet, adjacent to the lot line, and will do so, if not restrained: and it is alleged that such a walk along the north side of plaintiff's building is wholly inadequate to accommodate persons passing along the street and the large number of inmates of said building and those transacting business within the building during business hours of the day; that such persons would be crowded and jostled, and could not pass others on the walk without stepping therefrom into the street devoted to automobiles and other vehicles; that cutting the sidewalk to 5 feet there will interfere with the means of

egress from and ingress to said building; that it is proposed to permit the parking of automobiles and other vehicles along said sidewalk, rendering it unsafe for pedestrians to make their way along the same; that to reduce the width of the sidewalk, as proposed, will greatly depreciate the value of the building, to plaintiff's irreparable injury; and it is further alleged that, by the resolution widening the carriageway, as proposed, from its present width to that of 56 feet, and reducing the width of the sidewalk, as proposed, the city council is abusing the power vested in it, and acting arbitrarily and unreasonably, and for this reason, said resolution is void; that, unless enjoined, said city will proceed with the work of tearing out and removing said sidewalk, as alleged, and plaintiff will suffer great and irreparable injury, if defendant is permitted to carry out the resolution and make the changes as stated: and plaintiff prayed that defendant be restrained from making the changes proposed. Defendant interposed a general demurrer, which was sustained; and, as plaintiff elected to stand on the ruling, the petition was dismissed.

Section 751 of the Code confers on the city the "power to establish, lay off, open, widen, straighten, narrow, vacate, extend, improve and repair streets * * * within their limits." Code Section 753 provides that:

"They shall have the care, supervision and control of all public highways, streets, avenues, * * * within the city, and shall cause the same to be kept open and in repair and free from nuisances."

Section 792 of the Code declares that:

"Cities shall have power to improve any street, highway, avenue or alley by grading, parking, curbing, paving, graveling, macadamizing and guttering the same or any part thereof, and to provide for the making and reconstruction of such street improvements."

A sidewalk is a part of the street exclusively reserved

for pedestrians, and constructed somewhat differently
from other portions of the street, made use of by animals
and vehicles generally. It is paved differ-

1. WORDS AND
PHRASES:
sidewalks.

ently so that the public may be better
served, by maintaining the two portions of
the way separately. Whatever may be the
difference, the sidewalk constitutes a part of the street.
*Warren v. Henly,* 31 Iowa 31.

As tersely stated in *Wabash R. Co. v. DeHart,* 32 Ind.
App. 62 (65 N. E. 192) :

"The word 'sidewalk' has a well-understood meaning.
We understand *ex vi termini* that a part of the street is
meant. It is the public way, generally somewhat raised,
especially intended for pedestrians, and adapted to their
use, usually constructed in this country as a part of the
street, at or along the side of the part thereof especially de-
signed and constructed for the passage of vehicles and ani-
mals, there being often, if not generally, a gutter, also con-
stituting a part of the street, between such parts; and,
when the sidewalk is spoken of as being on a specific side
of a designated street, it is to be understood to be a part so
reserved of that street at or along the specific side of the
roadway."

See 1 Elliott on Roads and Streets (3d Ed.) Section 23;
*Perry v. Castner,* 124 Iowa 386; *Kohlhof v. City of Chicago,*
192 Ill. 249 (85 Am. St. 335) ; *Pomfrey v. Village of Sara-
toga Springs,* 104 N. Y. 459 (11 N. E. 43).

The particular thing complained of is the narrowing
of the sidewalk, set apart for exclusive travel by pedes-
trians (and consequent widening of that for the passage of
vehicles and animals and other traffic) : and appellant con-
tends that, in view of the uses made by its office building,
those occupying the same, and others having necessary busi-
ness therein, will be greatly inconvenienced, and it will re-
sult in the depreciation of the property in value; that, in

ordering the change in the sidewalk as described, the city council acted arbitrarily and oppressively; and that, for that reason, the city council should be restrained from carrying out its resolution and making the changes proposed. On the other hand, the appellee contends that the city is given by the statutes, excerpts from which are above quoted, full control over the streets, and that the courts may not interfere with the exercise of the discretion of the city council. It is not questioned that the legislature has plenary authority over the streets and highways of the state, and may delegate such authority to the cities and towns within which the streets are located. See 1 Elliott on Roads and Streets (3d Ed.), Section 511 *et seq.;* 28 Cyc. 288.

2. STATUTES: construction: delegation of authority to cities and towns.

The power to control, improve, and repair the streets is conferred by the statutes above quoted. The manner of so doing, however, is not prescribed. Where the legislature has authorized the city by resolution or ordinance to order a specified change or improvement, or to enact a specified requirement, there can be no doubt that the courts may not interfere; but where certain powers are conferred on the city council, and the manner of performing these has not been directed by the legislature, it would seem, according to the consensus of opinion, that the manner or mode of performance ought not to be arbitrary or oppressive; and that, when this is attempted, the courts may interfere, and prevent an unreasonable course on the part of the city in the execution of what it has, through the city council, enacted. *Kemp v. City of Des Moines,* 125 Iowa 640; *Swan v. City of Indianola,* 142 Iowa 731; *Lacy v. City of Oskaloosa,* 143 Iowa 704; *Hedge v. City of Des Moines,* 141 Iowa 4; *Dewey v. City of Des Moines,* 101 Iowa 416; *Des Moines Gas Co.*

3. MUNICIPAL CORPORATIONS: powers: jurisdiction of courts: arbitrary and oppressive acts of city council.

v. City of Des Moines, 44 Iowa 505; Town of Cherokee v.
S. C. & I. F. T. L. & L. Co., 52 Iowa 279; Miller v. City of
Webster City, 94 Iowa 162; Town of State Center v. Baren-
stein, 66 Iowa 249.

That the wisdom of a legislative act is not a matter of
judicial consideration or review is too manifest for argu-
ment; but short of this, the courts may inquire into the
acts of a city council. In other words,
where anything is done by the city in the
exercise of the legislative function, in pur-
suance of the power clearly conferred by the
general assembly, the courts will not inter-
fere. They may interfere, however, to pre-
vent the arbitrary and unreasonable or oppressive mode or
manner of performing what the city council may, in its leg-
islative discretion, order or require. The distinction point-
ed out clearly appears from an examination of the authori-
ties cited, and in decisions elsewhere. Had the petition
contained allegations of all the facts essen-
tial to determine the question, we should
have been compelled to ascertain whether
the actions of the city council were as al-
leged by appellant. In the control of the
streets of a city, the use thereof, and their
width, the extent and kind of travel necessarily are con-
trolling in the determination of the width of the sidewalk
and the width of the street between the curbings for general
traffic. Thus, in the residence portion of the city there may
be room in a street of ordinary width for a parking, a nar-
row sidewalk may serve the purposes of pedestrians, and
a narrow strip in the center be required for general traf-
fic; while in the business portion, a greater width will be
required to afford sufficient sidewalk room for pedestrians,
and enough space between the curbing for street car lines
and general traffic. It is often difficult and almost impos-

4. MUNICIPAL COR-
PORATIONS:
powers: im-
proper mode or
manner of per-
formance of
powers.

5. MUNICIPAL COR-
PORATIONS:
powers: arbi-
trary and un-
reasonable acts:
reducing width
of sidewalks.

sible, with any degree of certainty, to determine how the street shall be apportioned in width to the sidewalk and the space between the curbings, in the congested portion of a city, so as to best serve the public; and no nice distinction should be drawn as a test to embarrass the city council in the discharge of their duties. Manifestly, then, without more information than the petition affords, we are unable to determine what the relative width of the sidewalk and the space between the curbs should be, in front of appellant's building, or whether, in narrowing the sidewalk, the city acted arbitrarily or unreasonably. The mere fact that the narrowing of the sidewalk might interfere with the convenience of those occupying appellant's building or visiting same, or that this might depreciate its value, would not alone warrant the conclusion that the city council, in so ordering, acted arbitrarily or unreasonably. This may have been essential to the best care of the travel on that street. For all that appears in the petition, more room for street car service, the transportation of freight, the passage of automobiles and other vehicles, was required; and widening the way between the curbings to 56 feet did not furnish space for such traffic out of proportion to that left for sidewalk for pedestrians. In other words, the width of the street may have been apportioned between pedestrians and the general traffic in strict conformity to the necessities of each; and for this reason it cannot be said that the city council, whose acts are presumed to have been in good faith, acted unfairly or unreasonably in ordering the narrowing of the sidewalk and the corresponding widening of the space for general traffic. Besides omitting allegations with reference to the kind and extent of traffic on the street, other than along the sidewalk in front of appellant's building, the petition does not indicate whether the sidewalk was narrowed to 5 feet, or about that, on any other portion of the street on either side, or whether the resolution of the city

council related to any portion of the street other than that opposite plaintiff's building.   If the sidewalks were narrowed elsewhere along this street, it could hardly be said that the city was acting arbitrarily in such reduction in front of this building, unless other facts rendered it so. The facts alleged in the petition alone were not sufficient to warrant the condemnation of what was done as arbitrary and unreasonable or oppressive, nor even to overcome the presumption that the city council had acted legally and for the best interest of the public, and therefore the demurrer was rightly sustained.—*Affirmed.*

PRESTON, SALINGER, and STEVENS, JJ., concur.