ELLIS, Judge.
In this action plaintiff, Food Town Inc., having been denied permits for the sale of beer and liquor by the Town of Plaquemine, resorted to court proceedings authorized by LSA-R.S. 26:104 et seq., seeking judg *879 ment decreeing; that the said permits be issued to it under the provisions of the town’s ordinance No. 562 (the ordinance in effect when Food Town, Inc. commenced construction of its building, but later superseded by ordinance No. 570). In the alternative, plaintiff, Food Town, Inc., asked that ordinance No. 570 (adopted by the Town of Plaquemine when Plaintiff’s building was almost completed, but before formal application for beer and liquor permits was made) be declared unconstitutional because as drawn, applied, and interpreted by defendant, the plaintiff is deprived of its property without due process of law; and further in the alternative, that the ordinance be declared void in that it prescribed an unauthorized method of measurement of distance, and for judgment of distance, and for judgment decreeing that plaintiff’s establishment is more than 300 feet from Plaquemine High School. The trial court dismissed Plaintiff’s principal contention and held that a cursory reading of Section 7 of Ordinance 570 indicated that a portion of the said ordinance was unconstitutional as an illegal delegation of authority by the municipal governing body as well as an attempt to repose discretion in the same body in contravention of LSA-R.S. 26:80, and that the remainder of Section 7 of Ordinance 570 conformed to the method of measurements delineated in State Law and is valid, and, therefore, plaintiff was not ■entitled to the permits. Plaintiff appealed to the Supreme Court and the appeal was transferred to this Court. 239 La. 439, 118 So.2d 879.
Since there was no serious dispute as to the facts of the case, we adopt the trial judge’s finding as to facts.
“The salient facts are not in serious dispute between the parties litigant. It is shown that plaintiff desired to construct a •super market in the town of Plaquemine .and chose as the location therefor a site situated at the corner of Fort and Calvin Streets in said Town and lying directly across Calvin Street from property belonging to the Iberville Parish School Board on which is situated the Plaquemine High School. The record indicated it was apparent to appellant that difficulty might be encountered in securing permits for the location because of its proximity to the school, and for this reason appellant sought to assure itself in advance that such permits could be obtained.
“Prior to commencement of construction of its super market, appellant contacted the Mayor of the town and was assured by said official (verbally) that the premises in question could and would be licensed for the sale of beer and liquor in package lots. Thereafter appellant purchased the site and began erection of its store. Applications for the desired permits were made to the Town governing authority but after prolonged negotiations between appellant and said town governing authority the permits were refused.
“The properties occupied by the high school plant consists of two rectangular parcels of land (one lying west of the other) running in a generally north-south direction and both commencing on the south side of Fort Street which is a paved thoroughfare 39.10 feet in width, and which courses from east to west. The two tracts in question are separated by Terrebonne Street which extends in a northerly-southerly direction and intersects Fort Street. The width of Terrebonne Street is not shown in the record but from Exhibits D-l and FT-19 (maps of the area introduced by both appellant and appellee) said street appears to be approximately 50 feet in width. The high school proper is situated on the easternmost of the two tracts and the high school building itself faces in an easterly direction. Behind the high school and also situated on the easternmost tract is situated the high school gymnasium (said gymnasium being west of the high school building) which said gymnasium is situated near Terrebonne Street. Immediately'west of Terrebonne Street is situated the football field which is bounded on its Western line by Calvin Street which is 50 feet wide, intersects Fort *880 Street and extends from north to south. On this westernmost tract in addition to the aforementioned football field is situated a concrete spectator stadium consisting of tiered seats to accommodate those in attendance at football games and other events conducted on the football field. This modern football stadium is located on the western boundary of the tract occupied by the football field, it faces east and is shown to extend 4.10 feet into the right of way of Calvin Street. Also, situated near the western boundary of the school property and adjacent to the east line of Calvin Street is a frame building in which are conducted classes for the instructions of retarded children. The entire football field area including the stadium is enclosed by a chain link fence approximately eight feet in height excepting a portion of the western boundary which is enclosed by the walls of certain class room facilities which have been constructed beneath the stadium. The building in which classes for retarded children are taught is enclosed within the fence and reached by means of a gate constructed in the fence along the east side of Calvin Street. Classrooms for the teaching of industrial art classes (shop) have been built beneath the stadium. As will be shown in Exhibit D-9 these classrooms have been constructed one story high (of masonry construction) and have walls, roofs, windows and at least one door; which opens directly onto Calvin Street across the said street from appellant’s premises. It is further shown that a portion of the building in which retarded children are taught is used for the storage of school equipment and maintenance supplies as well as for the sale of soft drinks on occasion when the football stadium is in use. From the foregoing detailed explanation of the school properties and buildings, it is apparent that the facilities nearest the premises sought to be licensed consists of football stadium (with the industrial arts classrooms located thereunder) and a frame building in which retarded children are taught all of which are situated across Calvin Street from appellant’s store. It is conceded that all of these facilities were in existence and in use for their respective purposes prior to commencement of construction of appellant’s super market.
“There is no sidewalk [1] along either side of Calvin Street, neither is there a sidewalk along the south line of Fort Street. There is, however a sidewalk along the north side of Fort Street.
“As previously stated, appellant’s supermarket is situated on a site located at the southwest corner of the intersection of Calvin and Fort Streets. The building itself faces north and sits approximately ISO feet south of the south line of Fort Street. Said building parallels the sidelines of Calvin Street and is 67.50 feet west of the west line of Calvin Street. The front door of appellant’s supermarket is 198.80 feet from the sidewalk along the north side of Fort Street, it being shown that it is 159.70 feet from said entrance in a direct line to the point where the south line of Fort Street intersects the west line of Calvin Street and from thence across the width of Fort Street (39.10) feet to the said sidewalk.[2]
*881 “Adverting to the sequence of events which culminated in this litigation it appears that upon receipt of verbal assurance from the Mayor that the desired permits could be issued, .appellant commenced construction of its supermarket and subsequently on May 30, 1956, received a letter from the Mayor stating the premises in question could he used for the sale of beer and liquor in package lots. On the date of said letter, viz, May 30, 1956, issuance of such permits in the Town of Plaquemine was subject to the provisions of Municipal Ordinance 562 (See Exhibit FT-2) which contained no prohibition with respect to the location of places of business selling alcoholic beverages near churches, schools and other similar institutions. However, on July 30, 1956, the municipal governing authority repealed Ordinance 562 and reenacted in its stead Municipal Ordinance 570 prohibiting the sale of intoxicating beverages within 300 feet of schools, churches and like establishments. The pertinent portion of said Ordinance 570, Section 7 thereof, reads in full as follows:
“ ‘Section 7. Be it further ordained, etc., that it shall be unlawful for any person, firm or corporation to sell spirituous, vinous or malt liquor of an alcoholic content of more than 3.2 per cent by volume on any premises situated within three hundred (300') feet of a municipal public playground, or of a building used exclusively as a regular church, synagogue, public library, or school, except a school for business education conducted as á business college; the measurement of this distance shall be made as a person walks using the middle of the sidewalk from the nearest point of the property line of the church, synagogue, library, playground or school to the nearest point of the premises to be licensed; provided that if the area is undeveloped and there are no sidewalks, the measurement of this distance shall be in a straight line from the nearest point to nearest point; provided that should said person, firm or corporation applying for said permit file with his application for a permit, the written consent of the pastor, priest, or rabbi or governing authorities of any church or synagogue within the said 300 foot distance or the written consent of the governing authority of any library, playground or school within said distance, it shall be left to the discretion of the Mayor and Board of Selectmen to grant or refuse said permit. The prohibition to this section shall not .apply to .any premises which are maintained as a bona fide hotel, railway car or fraternal organization, or to any premises which has been licensed to deal in Alcoholic beverages for a period of one year or longer, pri- or to the adoption of this ordinance.’
“Despite its rejection of appellant’s application at a meeting held October 30, 1956, the municipal governing authority on December 28, 1956, adopted a formal resolution which provided in effect that the premises would be licensed on condition the consent .and .approval of the Iberville Parish School Board were obtained. See Exhibit FT-4. In this connection, it is desired to note the record contains a letter dated December 12, 1956, from L. G. Hoffman, Superintendent of Schools, Iberville Parish, to the town authorities advising that at an informal meeting of the school board (the date of which is not specified) the members of the school board consented to the issuance of the permits provided such issuance would not violate any state, parish or city law or ordinance. At this juncture it is significant to point out that the municipal .resolution of December 28, 1956, required that the consent of the school board be expressed in the form of a resolution adopted at an official session of said body. In a further effort to show consent and acquiescence of the school board, appellant presented appellee with a petition signed by certain members of the school board on May 17 and 21, 1957, in which the subscribers thereto expressed assent to li *882 censing the premises involved herein. It is further shown that .appellant was never successful in obtaining formal consent of the School Board, it appearing that when the matter was ultimately brought before said body in formal session, the resolution which would have granted said consent failed to achieve a majority vote.
“On April 12; 1957, plaintiff-appellant renewed its applications and was subsequently advised on August 31, 1957, unless consent of the School board was obtained as provided for in the ordinance, its premises could not be licensed for the sale of alcoholic beverages.
“The next development occurred September 6, 1958, on which date appellant filed its application for the third time. See Exhibit FT-11 and 12. Under date of October 8, 1958, appellant received a letter from the Town Attorney advising that the permits in question could not be issued until such time as the School Board formally consented thereto in which event it would then lie within the discretion of the municipal governing authority to grant or refuse same. See Exhibit FT-14.”
On the Merits
The enabling legislation which permits municipalities in the State of Louisiana to enact ordinances governing permits is contained in LSA-Revised Statutes 26:80, which is hereinafter quoted in full:
“ § 80. Location of business limited
“A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
“B. No permit shall be issued by the board or by any municipality or parish to authorize any business in any subdivision of the state where that business has been prohibited by referendum vote.
“C. Governing .authorities of parishes and municipalities may enact ordinances to prohibit the conduct of alcoholic beverages businesses within a certain distance of a parish or municipal public playground or of a building used exclusively as a regular church or synagogue, public librai-y, or school, except a school for business education conducted as a business college. No state or local permit shall be issued in contravention of any such ordinance.
“In municipalities the prohibition may not extend more than three hundred feet from the church, synagogue, library, school, or playground. The measurement of this distance shall be made as a person walks using the middle of the sidewalk from the nearest point of the property line of the church, synagogue, library, playground, or school to the nearest point of the premises to be licensed.
“Outside of municipalities, parish ordinances may extend the prohibition to a distance of five hundred feet of the church, synagogue, library, school, or playground. If the area is undeveloped and there are no sidewalks, the measurement of this distance shall be in a straight line from nearest point to nearest point. If there are sidewalks, the method provided for municipalities shall be used to measure the distance. The prohibition in this SubSection does not apply to .any premises which are maintained as a bona fide hotel, railway car, or fraternal organization, nor to any premises which has been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.”
LSA-Revised Statutes 26:80 is enabling legislation both conferring powers on local governing bodies and also limiting said powers. From a careful reading of the act it appears that the legislature has set up maximum distances that the local governing bodies may prohibit liquor establishments from churches, schools, etc. Fur *883 ther, the legislature has established methods of measurements to ascertain the maximum distance that local bodies have authority to regulate.
The second paragraph of Section C of LSA-R.S. 26:80 provides a maximum distance of three hundred feet that a municipality may prohibit the proximity of liquor establishments to churches, schools, etc. The act further spells out the method of determining this distance: “ * * * as a person walks using the middle of the sidewalk from the nearest point of the property line of the church, synagogue, library, playground, or school to the nearest point of the premises to be licensed.”
The third paragraph of Section C of LSA-R.S. 26 :80 is a delegation of authority and also a limitation on parish governing bodies and allows said bodies to provide a maximum distance of five hundred feet that the proximity of liquor establishments to churches, school, etc. may be prohibited. Further, if the area is undeveloped the method of measurement that the parish body may use is changed to “ * * * a straight line from nearest point to nearest point.” The act also provides that if there are sidewalks, the method of measurement provided for municipalities shall be used.
We now come to the question as to what constitutes a “sidewalk” within the intendment of LSA-R.S. 26:80. Counsel for defendant contends that a sidewalk can only be an improved walkway, either paved or constructed in some manner. We feel that the term has a much broader meaning. From Black’s Law Dictionary, fourth edition,[3] we find various definitions of the term, but most commonly defined as a walk for foot passengers at the side of a street. In Judice et al. v. Village of Scott, 1929, 168 La. 111, 121 So. 592, 596, the organ of the court stated: “It is the established jurisprudence of this state that: ‘No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. Nor is any particular form necessary to the dedication of land to the public use. All that is required is assent of the owner of the land, ,and the fact that it is being used for the purposes intended.’ ” (Numerous cases cited.) The Court further pointed out that the village had sidewalks within the limits of some of the streets and that some dirt sidewalks were shown.
It is significant that in 1948, when LSA-R.S. 26:80 was adopted, many of the smaller municipalities did not have paved or constructed sidewalks and the legislature did not make any distinction as concerns municipalities.
It is common knowledge that in municipalities pedestrians proceed along walks *884 parrallel to streets, or at least on the edge of streets, whereas outside of municipalities pedestrians normally have no established pattern for walking. We feel that in passing LSA-R.S. 26 :80 the Legislature recognized the fact, and in municipalities, intended for measurements to be made along walkways on the edge of streets, or parrallel to the side of streets.
We therefore conclude that even though a municipality may not have paved sidewalks or property in which a question arises as to the proximity of a liquor establishment and a church, school, etc., it is none the less bound to use the method of measurement as set out in the second paragraph of Section C, LSA-R.S. 26:80.
In a word, we feel that Section 7 of City Ordinance No. 570 goes beyond the power conferred by the legislature, and that the city’s authority goes no further than to provide a method of measurement as a person walks using the middle of the sidewalk, and in the absence of a paved or constructed sidewalk, the middle of the area used for pedestrians at the side of a street, from the nearest point of the property line of the school, church, synagogue, library, playground, or school to the nearest point of the premises to be licensed.
Appellee contends that a proper interpretation of LSA-R.S. 26:80 is that it intends the measurement to run from the property line of the school property to the property line of the licensed premises. In this regard we .agree with the opinion of the trial judge as follows:
“The method of measurement must be determined by interpreting the legislative intent as expressed in the language chosen bearing in mind the intent and purpose of the legislature in enacting the legislation in the first place. The statutes in question are obviously police measures intended to control the distance in which businesses selling alcoholic beverages may be located or prohibited with respect to churches, schools and other facilities therein specified. Its obvious purpose is to permit parishes and municipalities to prohibit such places of business within the prescribed distance of three hundred feet in order that persons within such public buildings or entering same will neither have ready access to business places selling .alcoholic beverages nor be subject to viewing or becoming involved in incidents of the type which frequently occur in and about premises where intoxicating beverages are sold.
“It is fundamental law where the legislative will is clearly and unambiguously expressed the courts are bound thereby. In the statute under consideration, it is expressly provided that in municipal areas where there are sidewalks the distance shall be measured as a person walks using the middle of the sidewalk from the nearest property line of the church or school to the nearest point of the premises to be licensed. As stated in Marino v. City of Baton Rouge [La.App.] 61 So. (2nd) 588, if the legislature had intended the measurement to be from property line to property line it could easily have so stated. It will be noted the statute provides:
“ ‘C — Governing Authorities of Municipalities May Enact Ordinances to Prohibit the Conduct of Alcoholic Beverage Businesses Within a Certain Distance of — a Building used Exclusively as a Regular School.’ (Underscoring by the Court)
“The above quoted provisions of the statutes do not state that the licensed premises shall be the required distance from the property line of the school but shall be the required distance from ‘a building used exclusively as a regular school.’
“Said statute further provides that in municipalities measurement of the distance shall be as follows:
“ ‘The measurement of the distance shall be made as a person walks using the middle of the sidewalk from the nearest point of the property line of *885 the — school—to the nearest point of the premises to be licensed.’ (Underscoring by the Court)
“The words ‘the measurement of this distance shall be made as a person walks using the middle of the sidewalk From the Nearest Point of the Property Line of the —School’, is interpreted by this court to mean ‘as a person walks from the school building to the property line of the school nearest the school building and thence to the middle of the sidewalk adjacent thereto from which said point the measurement is continued along the sidewalk to the licensed premises.’ ”
For the above reasons it is the opinion of this court that the correct measurement to be applied is prescribed by the second paragraph of Section C, LSA-R.S. 26:80 as interpreted by Marino v. City of Baton Rouge, La.App.1952, 61 So.2d 588, and that appellant’s establishment is more than three hundred feet from the nearest school building.
Having reached the above conclusion, there is no need for us to pass upon the other issues raised by this appeal. However, in view of the importance of the case, they will be discussed briefly.
As to appellant’s contention that its application should be acted and controlled pursuant to the provisions of Ordinance 562 (in effect when appellant commenced construction of building) we agree with the trial judge in holding that this is without foundation. Formal application was not made until after Ordinance 570 had been enacted. The informal discussion which appellant’s representatives conducted with the Mayor do not constitute application for the desired permits and further, the Mayor possessed no individual authority to grant the desired licenses.
 As to appellant’s contention that Section 7 of the disputed ordinance is unconstitutional, null and void because, as drawn, .applied and interpreted by appellee, appellant is deprived of due process of law, we do not feel that a decision in this regard is necessary since we have held that the Town exceeded its authority in providing a method of measurement different from that authorized for municipalities in LSA-R.S. 26:80, and that portion of said ordinance is null, void, and of no legal effect. However, we agree with the trial judge in his holding that Section 7 of Ordinance 570 is unconstitutional in part. Those provisions which leave enforcement of the prohibition clause to the discretion of the governing authority in those instances where consent of certain persons and bodies is obtained is, in itself, unconstitutional, null and void for the reason that the governing authority has no power to grant or refuse such permits in its discretion. If an applicant meets all lawful requirements for a permit, he is entitled to the permit of right.
For the reasons set forth it is ordered, adjudged and decreed that the judgment of the District Court decreeing as unconstitutional that portion of Section 7 of Ordinance 570, to-wit: “provided that should said person, firm or corporation applying for said permit file with his application for a permit, the written consent of the pastor, priest or rabbi or governing authorities of any church or synagogue within the said 300 foot distance or the written consent of the governing authority of any library, playground or school within said distance, it shall be left to the discretion of the May- or and Board of Selectmen to grant or refuse said permit” is affirmed.
It is further ordered, that the judgment of the District Court decreeing that portion of Section 7 of Ordinance 570 as legal and binding, viz., “provided that if the area is undeveloped and there are no sidewalks, the line from the nearest point to the nearest point,” is reversed and it is now ordered, adjudged and decreed that said lastly quoted portion of said Ordinance Number 570, Section 7, is null, void and of no legal effect. It is further ordered, adjudged and decreed that there be judgment in favor of *886 plaintiff, Food Town, Inc., and against the Town of Plaquemine, Louisiana, ordering it to issue permits to Food Town, Inc. for the sale of package liquor and beer in accordance with law.
Town of Plaquemine to pay all costs in accordance with law.
Affirmed in part.
Reversed in part.
LANDRY, J., not participating.

. Our Note. We disagree with the trial judge’s use of the term “sidewalk” as a constructed, improved, or paved walkway. We do accept, however the trial judge’s finding that there is no paved sidewalk along either side of Calvin Street.

. Our Note. It is conceded by both counsel for plaintiff and counsel for defendant that measuring from the Food Town structure to the southeast corner of Calvin Street, then across Calvin Street and back to the nearest school structure would be a distance greater than three Hundred (300) feet. However’, the defendant contends that a measurement beginning at the opposite corner of the Food Town building and ending at the opposite corner of the nearest school structure would be less than 300 feet, but a scale measurement of this course also shows the distance to be more than 300 feet.

. Black’s Law Dictionary. “Sidewalk”, page 1552. “That part of a public street or highway designed for the use of pedestrians, City of Birmingham v. Shirley, 209 Ala. 305, 96 So. 214, 215; being exclusively reserved for them, and constructed somewhat differently than other portions of the street used by animals and vehicles generally, Central Life Assur. Soc. of the United States, v. City of Des Moines, 185 Iowa 573, 171 N.W. 31, 32. That part of the street of a municipality which has been set apart and used for pedestrians, as distinguished from that portion set apart and used for animals and vehicles. Graham v. [City of] Albert Lea, 48 Minn. 201, 50 N.W. 1108; McCormick v. Allegheny County, 263 Pa. 146, 106 A. 203, 204. A way for foot passengers, or a public way especially intended for pedestrians. Russo v. City of Pueblo, 63 Colo. 519, 168 P. 649, 650. A walk for foot passengers at the side of a street or road. Kohlhof v. [City of] Chicago, 192 Ill. 249, [61] N.E. 446, 85 Am.St.Rep. 335; Challiss v. Parker, 11 Kan. [384] 391; State v. Berdetta, 73 Ind. 185, 38 Am.Rep. 117; Pequignot v. [City of] Detroit, C.C.Mich., 16 F. [211] 212.
Generally the sidewalk is included with the gutters and roadway in the general term ‘Street’. In re: Burmeister, 76 N.Y. 174; Warner v. Knox, 50 Wis. 429, 7 N.W. 372; Wiles v. Hoss, 114 Ind. 371, 16 N.E. 800. But in many cases of municipal ordinances and contracts the word ‘street’ is held not to include sidewalks. Barry v. City of Cloverport, 175 Ky. 548, 194 S.W. 818, 819. See, also, James v. City of Newberg, 101 Or. 616, 201 P. 212.”