# GERALDINE C. LAMB v. SOUTH UNIT JEHOVAH'S WITNESSES.[1]

December 22, 1950.

No. 35,304.

*W. L. Sholes,* for appellant.

*Laurence M. Nelson, Edward A. Knapp,* and *Francis X. Buchmeier,* for respondent.

CHRISTIANSON, JUSTICE.

Plaintiff, while walking on the public boulevard in front of defendant's church, was injured when she stepped into a hole in the ground during a heavy rainstorm. The jury found for plaintiff, and defendant appeals from an order denying its alternative motion for judgment or a new trial. The amount of the verdict is not questioned.

[1]Reported in 45 N. W. (2d) 403.

Defendant is a religious corporation. It owns, maintains, and operates a church at 239 Concord street in the city of St. Paul. The church was built during the winter of 1947-1948. During the course of its construction, defendant, through its board of trustees, engaged the services of an independent contractor to connect the church building with the city sewer main. The chairman of defendant's board of trustees and its secretary, who was also one of its trustees, in their testimony summarized the manner in which the contractor did the work, as follows: The contractor dug up the ground from Concord street across the boulevard to the public sidewalk and underneath the sidewalk to the church building. After the sewer pipes had been laid and connected, he refilled the opening under the sidewalk and the hole in the boulevard with the dirt which had been dug up previously. The contractor commenced his work in January 1948 at a time when the ground was not frozen. However, it was frozen the latter part of February, when the holes were refilled and the job completed. Both of these witnesses were present while the work was in progress and after its completion. The work was completed about March 1, 1948. Shortly thereafter the contractor was paid for the work. The first services were held in the new church on March 1, 1948. Services have been held on an average of three times a week since that date. In describing the condition of the boulevard as left by the contractor, one of the trustees testified that "At the top of the hole" in the boulevard there were "large chunks" of frozen dirt in the filling and that the filling "looked like a grave," because it protruded about three inches above the rest of the normal level of the boulevard. He testified further that "You could see where the hole was," but he did not know whether there were large chunks inside the hole or not. The trustees had charge and were in control of the general management of defendant's affairs. It was their duty to "look after things" for the church. However, they had no supervisory control over the con-

tractor as to how and when this work was done. The boulevard remained in the same condition up to the time of the accident.

On April 23, 1948, approximately 53 days after the work had been completed and accepted by defendant's trustees, plaintiff was walking along the sidewalk abutting defendant's property during a heavy rainstorm. It had started to rain about 5 p. m. that day. Plaintiff was not wearing rubbers. As she approached the part of the sidewalk under which the contractor had dug to connect the church with the sewer main, she saw a depression in the sidewalk filled with muddy water. It appeared to her to be "perhaps about five or six inches" "at about the deepest spot in the depression." It looked deeper than two or three inches to her. She testified that that was why she "walked around it" and stepped out onto the boulevard. It appeared to her that there was not as much water on the boulevard as there was in the depression in the sidewalk and that it seemed to her "it was the safest way of going." She took about three steps on the boulevard to test it— "it was solid ground and it seemed safe enough," she testified. The water there was not over her shoes. She took another step and fell into a hole and sustained injuries. She was wet up to above her waistline. Because the water on the boulevard, as on the sidewalk, was muddy, plaintiff could not see that there was a hole in the boulevard. She tried to crawl out of the hole but slipped back in. She tried again and succeeded. It was raining hard at the time. The hole was described by plaintiff's father as about 18 inches in diameter and about 24 inches deep. It was located in the part of the boulevard which in February the contractor had previously dug up between the curb and sidewalk and had refilled with large chunks of frozen dirt. Plaintiff had never walked over this sidewalk before the accident.

Plaintiff testified that she left her place of employment at 5:30 p. m. to go home. It was raining then. She boarded a South St. Paul streetcar at Seventh and Wabasha streets. The streetcar conductor would not let any of the passengers off at State and

Concord streets, which was a block before her stop, because there was a "good deal of water" there. At her regular stop, Winifred and Anita streets, he did not let anybody off the streetcar for the same reason, "so everybody had to go down to the next block," she said, where she and other passengers got off the streetcar. She testified that "It was just as bad down there as the other place," "There was—must have been two or three inches of water in the street, you see, and most of Concord Street has a lot of hills running down on to it and most of the sewers had backed up. There was a good deal of water in the street, and he [the conductor] thought by going down a couple of blocks more away from these hills, the water might have been less and we wouldn't get so wet getting off." Although the testimony shows that it was a heavy spring rain, it does not appear to have been any heavier than previous rains in this particular locality at that time of the year.

A witness for plaintiff, Elvina Kurren, who lived two doors from defendant's church, testified that she observed a depression, "maybe two or three inches," in the sidewalk before the accident. She testified that she had "never paid any particular attention" to the condition of the excavation in the boulevard except to notice the dirt. The first time she saw it after plaintiff's accident it was covered with water. Subsequently that evening she examined the hole in the boulevard and found it was about two and a half feet deep. There was some water in the bottom of the hole the second time she saw it.

After both parties had rested, defendant moved for a directed verdict in its favor on the grounds (1) that there was no evidence of defendant's negligence, and (2) that plaintiff was guilty of contributory negligence as a matter of law. The trial court denied defendant's motion, and the issues of negligence and contributory negligence were submitted to the jury. The denial of this motion is the only error assigned on appeal.

Defendant contends that it was free from negligence as a matter of law. It asserts that the hole in the boulevard was created by the rainstorm in progress when plaintiff fell into the hole; that defendant had no knowledge thereof until after the storm; and that the only negligence shown by the evidence was the negligence of defendant's independent contractor, over whom it had no control.

■ As a general rule, an employer is not liable for the acts of an independent contractor or his servants. However, as stated in Pacific F. Ins. Co. v. Kenny Boiler & Mfg. Co. 201 Minn. 500, 503, 277 N. W. 226, 228, there are so many exceptions to the rule that an employer is not liable for the negligence of an independent contractor whom he employs "that the rule is now primarily important as a preamble to the catalog of its exceptions." See, Restatement, Torts, §§ 410 to 429. One of the exceptions is that of a person under a duty to the public to see that the work he is about to have done is carefully performed so as to avoid injury to others. In such case, the party causing the work to be done cannot, by letting it to a contractor, avoid liability in case the work is negligently done to the injury of another.[2] The principle that a contractor may be employed to do a particular job under circumstances which leave the owner of premises charged with the duty which regularly attaches to him to see that the work does not endanger the safety of others, and that such absolute duty is nondelegable to an independent contractor, has been applied by this court in a number of similar cases. See, Ray v. Jones & Adams Co. 92 Minn. 101, 99 N. W. 782; Corrigan v. Elsinger, 81 Minn. 42, 83 N. W. 492; Moore v. Townsend, 76 Minn. 64, 78 N. W. 880; Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698; 4 Dunnell, Dig. & Supp. § 5835.

[2]See, Prosser, Torts, § 64; 21 Minn. L. Rev. 462; 27 Am. Jur., Independent Contractors, §§ 38, 39; 1 Shearman and Redfield, Negligence (Rev. ed.) §§ 19, 176, 177; Annotations: 23 A.L.R. 984, 1016, 1084; 115 A. L. R. 965 (injuries resulting from conditions created by independent contractor in streets); 76 A. S. R. 405; 65 L. R. A. 445, 484.

It has been held generally that (27 Am. Jur., Independent Contractors, § 46):

"An abutting owner who causes an excavation or obstruction to be made in or near a public highway in front of his premises in such a manner that injury to a traveler will result unless precautions are taken cannot let the work to an independent contractor and escape liability if such contractor fails to take the necessary precautions."

And (*Id.* § 50):

"* * * Where street dangers[3] are increased by the abutting owner through the means of a contractor, there is a duty on such owner to protect travelers from injury; and the employment of an independent contractor will not save him from liability." See, Prosser, Torts, § 64, p. 488, and cases cited in note 7.

Likewise (*Id.* § 38):

"It is well settled that one who orders work to be executed, from which, *in the natural course of things, injurious consequences must be expected to arise unless means are adopted by which such consequences may be prevented, is bound to see that necessary steps are taken to prevent the mischief,* and such person cannot relieve himself of his responsibility by employing someone else, whether the contractor employed to do the work from which the danger

---

[3]The boulevard here in question was between the curb and the sidewalk in front of defendant's property. It was a part of the street. Burke v. O'Neil, 192 Minn. 492, 257 N. W. 81. In Kendrick v. City of St. Paul, 213 Minn. 283, 289, 6 N. W. (2d) 449, 452, in a footnote, we recognized the definition of "boulevard" as follows: " 'The name [boulevard] is now sometimes extended to * * * a street which is of especial width, is given a parklike appearance by reserving spaces at the sides or center for shade trees, flowers, seats, and the like.' Century Dictionary (Rev. ed.); 5 Wd. & Phr. (Perm. ed.) p. 726." See, Jablonski v. City of Bay City, 248 Mich. 306, 226 N. W. 865. Sidewalks are also parts of streets. Graham v. City of Albert Lea, 48 Minn. 201, 50 N. W. 1108; Furnell v. City of St. Paul, 20 Minn. 101 (117); Moore v. City of Minneapolis, 19 Minn. 258 (300); 39 Wd. & Phr. (Perm. ed.) p. 265.

arises, or some third person, *to do what is necessary to prevent the work from becoming wrongful."* (Italics supplied.)

If the employer, at the time of acceptance and resuming possession of the work from an independent contractor, *knew, or ought to have known, or from a reasonable inspection could have known* that there was any defect in the work, he is responsible for any injury caused to a third person by the defective construction. See, Prosser, Torts, § 64, p. 485, note 88; 1 Shearman and Redfield, Negligence (Rev. ed.) § 21; 27 Am. Jr., Independent Contractors, §§ 37 and 55.

Here, defendant's trustees admittedly knew that in February the hole in the boulevard had been filled in with chunks of frozen dirt. An inspection of the fill would have revealed that it had not been properly packed and that it would settle and subside unless given further attention. Moreover, it was self-evident that the frozen dirt thrown back into the hole, as apparently this was, would not produce a satisfactory and lasting fill. Defendant, in the exercise of reasonable care, should have anticipated that the fill would wash out, as it did, during the heavy spring rains experienced in this area each year. See, Willie v. Minnesota Power & Light Co. 190 Minn. 95, 250 N. W. 809; Brown v. German Rock Asphalt Co. 236 N. Y. 271, 140 N. E. 695; Johnson v. Friel, 50 N. Y. 679; Restatement, Torts, § 290. Furthermore, it was reasonably foreseeable that a pedestrian would be injured unless precautions were taken to correct the defective condition before spring. See, 4 Dunnell, Supp. § 7000c. The jury's finding of negligence was amply justified in this case. Molis v. City of Duluth, 226 Minn. 79, 32 N. W. (2d) 147; Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671; Johnson v. Elmborg, 165 Minn. 67, 205 N. W. 628; Moore v. Townsend, 76 Minn. 64, 78 N. W. 880, *supra;* McCarrier v. Hollister, 15 S. D. 366, 89 N. W. 862; Gainfort v. 229 Raritan Avenue Corp. 127 N. J. L. 409, 22 A. (2d) 893; cf. Shepstedt v. Hayes, 221 Minn. 74, 21 N. W. (2d) 199; Kooreny v. Dampier-Baird Mortuary, Inc. 207 Minn. 367, 291

N. W. 611; Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law. The facts have been set out in detail. It is sufficient to point out that plaintiff walked on the boulevard to avoid a puddle of water five or six inches deep resulting from the depression in the sidewalk caused by defendant's negligence. See, Williams v. John A. Stees Co. Inc. *supra*. She took four steps and fell into a hole concealed by muddy water. It was raining hard at the time. The issue of contributory negligence was clearly a fact question for the jury. See, Bowen v. City of St. Paul, 152 Minn. 123, 188 N. W. 554; Thoorsell v. City of Virginia, 138 Minn. 55, 163 N. W. 976; 4 Dunnell, Dig. & Supp. § 6838.

Affirmed.