**BLACKHAWK HOTELS COMPANY, a corporation, Appellant,**

v.

Laurence L. **BONFOEY**, and Haughton Elevator Company, a corporation, Appellees.

Laurence L. **BONFOEY**, Appellant,

v.

**HAUGHTON ELEVATOR COMPANY, a** corporation, Appellee.

Nos. 15292, 15294.

United States Court of Appeals Eighth Circuit.

Nov. 22, 1955.

Clifford W. Gardner, St. Paul, Minn., for Blackhawk Hotels Co.

Chester D. Johnson, Minneapolis, Minn. (William H. DeParcq, Minneapolis, Minn., on the brief), for Laurence L. Bonfoey.

Linus J. Hammond, St. Paul, Minn. (Cummins, Cummins, Hammond & Ames, St. Paul, Minn., on the brief), for Haughton Elevator Co.

Before SANBORN, COLLET and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Bonfoey, plaintiff below, and hereinafter so designated, brought this action against Blackhawk Hotels Company, hereinafter called Blackhawk, operator of the Lowry Hotel in St. Paul, Minnesota, and Haughton Elevator Company, hereinafter called Haughton, which had contracted to maintain the elevators in the Lowry Hotel, for damages suffered in the fall of a passenger elevator in the Lowry Hotel, which elevator the plaintiff was riding as a paying hotel guest. Liability is predicated upon negligence. The jury by answers to special interrogatories found both Blackhawk and Haughton guilty of negligence. The jury also fixed the amount of damages which is not in controversy on appeal. The court, upon Haughton's motion for judgment notwithstanding the verdict reiterating the grounds upon which Haughton had asked for a directed verdict, set aside the jury's finding that Haughton was negligent, and entered final judgment against the plaintiff upon his claim against Haughton. The court overruled Blackhawk's motion for a directed verdict and judgment notwithstanding verdict, and entered final judgment in favor of the plaintiff against Blackhawk. Blackhawk had filed a cross complaint against Haughton for indemnity or contribution in the event plaintiff recovered against Blackhawk, on the basis that plaintiff's injuries were solely caused by the negligent maintenance of the elevator by Haughton. The court entered final judgment denying Blackhawk relief against Haughton.

The plaintiff appeals from judgment dismissing his claim against Haughton. Blackhawk appeals from the judgment rendered against it in favor of plaintiff and from the dismissal of its cross complaint against Haughton.

Jurisdiction based upon diversity of citizenship has been established.

The accident here involved occurred on November 8, 1952, at about 6:30 p. m. It is admitted that the elevator fell from the third floor of the Lowry Hotel into the pit in the sub-basement, a distance of about 45 feet. The elevator carried nine persons which was not an overload. After the elevator left the third floor there was a clicking noise and the oper-

ator exclaimed, "I can't stop it." The operator testified he brought the control lever to neutral position and then to the up position, but these movements did nothing to stop the descent of the elevator. The operator also said he pushed the emergency stop button about the time the elevator struck the bottom of the shaft. It is uncontroverted that the operator pushed some button in addition to moving the control lever. The emergency stop button and the generator stop button are located near each other, and it is the contention of Haughton that the operator inadvertently pushed the generator stop button instead of the emergency stop button. Carl Becker, the elevator operator at the time, was 17 years old, and had worked for the Lowry about a month as an elevator operator. Upon commencing to operate the elevator he received about fifteen minutes instruction from another operator. He had no city license to operate an elevator and had been unable to get one largely because he had been unable to find the party issuing such licenses in his office.

The elevator here involved was installed approximately 25 years prior to the accident, and since its installation it had had adequate care and maintenance including replacement of worn or broken parts, but there had been no modernization of the elevator by adding new or improved equipment.

Prior to the accident the elevator had operated in a normal manner, and regular inspections by Haughton, the city, and the insurance carrier had revealed no defects. After the accident numerous tests were made of the elevator by Haughton, the city inspector, and representatives of Blackhawk, and all of the safety devices, including those controlled by the operator and those over which he had no control, were properly working, except for certain matters in connection with the governor, the roller on the final limit switch, and the counterweights, all of which will be later discussed.

Blackhawk asserts that it is entitled to a reversal for the following reasons:

I. This is a non-jury case, the jury's answer to the interrogatories are advisory only, and upon the record this court can fix and establish the rights and obligations of all of the parties regardless of form so as to accomplish justice.

II. Plaintiff has failed to prove negligence on the part of Blackhawk either by res ipsa loquitur or otherwise, and its motions for a directed verdict and judgment notwithstanding the verdict should have been sustained, and the court erred in submitting to the jury Blackhawk's liability to the plaintiff for any negligence of which Haughton might have been guilty upon the non-delegable duty theory.

III. There was sufficient evidence to support the finding of the jury that Haughton was negligent, and accordingly the court erred in setting aside such finding and determining as a matter of law that Haughton was not negligent.

IV. The court erred in dismissing Blackhawk's cross complaint against Haughton for indemnity or contribution.

The plaintiff's appeal is based upon his contention that the evidence supports the jury's finding that Haughton was negligent. The plaintiff's contention in this respect is substantially the same as Blackhawk's third contention above set out, and will be discussed with Blackhawk's similar contention hereinafter.

We will now consider the errors urged.

I. We find no merit in Blackhawk's first assignment of error. The plaintiff asked for a jury trial. The case was tried to a jury. The jury was properly instructed as to the applicable law, and by answer to special interrogatories the jury found (1) Blackhawk's operator was negligent, (2) Haughton was negligent in the performance of its duty under its maintenance contract, and (3) Blackhawk was also guilty of other negligence in addition to that arising out of the negligence of its operator and Haughton's negligence. All such findings also included a finding that negligence was

a proximate cause of the accident. Additional interrogatories were answered fixing damages, and a general verdict was rendered for the plaintiff against both Blackhawk and Haughton. As to the method of submission the court in its memorandum decision states:

"At the trial, upon stipulation of counsel, certain factual issues involved in this lawsuit were presented to the jury on certain interrogatories. It was agreed that, upon these interrogatories as answered by the jury, and upon the general verdicts submitted to and answered by the jury on the issues as between plaintiff and defendants, the Court would make findings of fact and conclusions of law and dispose of the issues which were presented by the cross complaint or third-party action herein."

▆ We believe the foregoing statement fairly describes the method in which this case was submitted. We believe that it was the intention of both the court and the parties that the fact issues were to be determined by the jury. A submission such as this is authorized by Rule 49 of the Federal Rules of Civil Procedure, 28 U.S.C.A. No authority has been cited or found to support Blackhawk's contention that the trial here was not a jury trial, at least insofar as it related to the issues asserted by the plaintiff against Blackhawk and Haughton. The issues raised by Blackhawk's cross claim against Haughton were not submitted to the jury and were to be determined by the court.

▆ Moreover, even in a trial to the court, under Rule 52(a) of the Federal Rules of Civil Procedure findings of fact can not be set aside unless they are without adequate evidentiary support or induced by an erroneous view of the law. Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136; Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735; Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695. We believe that Blackhawk's contention here is in substance that the

court should try the case de novo on the record. A similar contention was made in the Dierks Lumber & Coal Co. case and rejected. The jurisdiction of this court is appellate and it has no right to retry the issues of fact or substitute its judgment with respect to such issues for that of the trial court. The findings of the trial court can not be set aside unless there is no substantial evidence to sustain such findings, or unless the findings are induced by an erroneous view of the law.

▆ II. The jury by its answers to the interrogatories has said that Blackhawk was negligent in the operation of its elevator, and was also negligent in connection with the type of elevator facilities furnished. The trial court in ruling upon Blackhawk's motion for judgment notwithstanding the verdict found that the evidence supported a finding of negligence against Blackhawk which was a proximate cause of the accident. Blackhawk here seeks to avoid liability primarily on the theory that under its contract with Haughton it was Haughton's obligation to maintain the elevator in safe condition, and that if the accident was caused by the failure of any of the safety devices to function properly such a result was brought about by Haughton's negligence. The trial court instructed the jury that Blackhawk had a non-delegable duty to use reasonable care to furnish safe elevator transportation. Such instruction appears to properly state the applicable law of Minnesota. Lamb v. South Unit Jehovah's Witnesses, 232 Minn. 259, 45 N.W.2d 403, 33 A.L.R.2d 1; Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 201 Minn. 500, 277 N.W. 226. In the Lamb case, 45 N.W.2d at page 406 the court says:

"As a general rule, an employer is not liable for the acts of an independent contractor or his servants. However, as stated in Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 201 Minn. 500, 503, 277 N.W. 226, 228, there are so many exceptions to the rule that an employer is not liable for the negligence of an independent

pendent contractor whom he employs 'that the rule is now primarily important as a preamble to the catalog of its exceptions.' See, Restatement, Torts, §§ 410 to 429. One of the exceptions is that of a person under a duty to the public to see that the work he is about to have done is carefully performed so as to avoid injury to others. In such case the party causing the work to be done cannot, by letting it to a contractor avoid liability in case the work is negligently done to the injury of another. The principle that a contractor may be employed to do a particular job under circumstances which leave the owner of premises charged with the duty which regularly attaches to him to see that the work does not endanger the safety of others, and that such absolute duty is nondelegable to an independent contractor, has been applied by this court in a number of similar cases. * * * "

Section 425 of the Restatement of the Law of Torts provides:

"Repair of Chattel Supplied or Land Held Open to Public as Place of Business.

"One who employs an independent contractor to maintain in safe condition

"(a) land which he holds open to the entry of the public as his place of business, or

"(b) a chattel which he supplies for others to use for his business purposes or which he leases for immediate use,

is subject to the same liability for bodily harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands.

*"Illustrations:*

"1. A operates a department store. He employs the B Elevator Company to repair his elevators therein. Due to the negligence of the B Company, the elevator is dangerously defective. It falls and harms C who has come to buy and D who has come to the shop to look over the goods displayed. A is subject to liability to C and D."

Illustration 1 just quoted covers the situation confronting us here. Thus it would appear that if there was any negligence in maintaining the elevator facilities which proximately caused the accident Blackhawk would be liable therefor even though the negligent act may have been committed by Haughton.

Plaintiff pleaded general negligence, and stated that the elevator was under the joint and concurrent control of Blackhawk and Haughton who by reason of their position had access to information as to the cause of the accident, and that plaintiff was without means and access to information as to the cause of the accident.

The Minnesota court has applied the res ipsa loquitur doctrine to elevator cases. Burr v. Curtis Hotel Co., 151 Minn. 200, 186 N.W. 302; Ryan v. St. Paul Union Depot Co., 168 Minn. 287, 210 N.W. 32. In the Ryan case the court states that its application of the res ipsa loquitur doctrine has been liberal, and with reference to the application of the rule quotes and approves, 210 N.W. at pages 32–33, the following from Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815:

"'That the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defend-

ant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff.'"

The trial court submitted the case against Blackhawk to the jury upon res ipsa loquitur, and in passing upon Blackhawk's various motions the trial court stated:

"At the outset, it seems too clear for serious controversy that the evidence fully justified the finding of actionable negligence by the jury upon the part of the Hotels Company. The Hotels Company did not overcome the inference of negligence that arises under the doctrine of res ipsa loquitur. Its position throughout the entire trial was that the elevator was unsafe, but that if plaintiff was entitled to any recovery by reason of the accident which befell him, then the Hotels Company should have judgment over against the Haughton Elevator Company for the full amount of such recovery. Consequently, there is no difficulty in sustaining the verdict as to the Hotels Company, which was required to exercise the highest degree of care to the plaintiff herein. * * *"

We have carefully examined the record. Blackhawk has offered very little evidence to explain why the numerous safety devices with which the elevator was equipped failed to function. About all Blackhawk has tried to do is to blame Haughton for the accident. However, as heretofore pointed out, such evidence does not aid Blackhawk because it is responsible for any negligence on the part of Haughton under the non-delegable duty theory hereinabove discussed. We agree with the trial court that the record in this case fully supports a verdict against Blackhawk on res ipsa loquitur.

III. The jury found Haughton guilty of negligence in the performance of the duties it assumed by its contract. The trial court sustained Haughton's motion for judgment notwithstanding verdict upon the basis that no negligence on the part of Haughton was shown which constituted a proximate cause of the accident. Both plaintiff and Blackhawk complain that in so doing the court committed error. The proper test to be applied is whether there was substantial evidence to support the finding that Haughton was guilty of negligence which proximately caused the accident. The plaintiff was not entitled to the benefit of the res ipsa loquitur doctrine as against Haughton, as res ipsa loquitur can not apply unless it appears, among other things, that the defendant had exclusive control of all the instrumentalities causing the accident. Barnes v. Northwest Airlines, Inc., 233 Minn. 410, 47 N.W.2d 180, 191; Northwest Airlines, Inc., v. Rowe, 8 Cir., 226 F.2d 365. Here it is undisputed that the elevator was operated by Blackhawk's employee over whom Haughton had no control. Haughton therefore did not have control of all the instrumentalities which caused the accident. Haughton's duty, if any, toward the plaintiff arose by virtue of the maintenance contract it entered into with Blackhawk. In order to recover from Haughton, the burden of proof was upon the plaintiff to establish that Haughton was guilty of some negligent act or omission in connection with the duties it had assumed under its contract, and that such act or omission either directly caused or directly contributed to the happening of the accident. We look to the contract to ascertain what duties Haughton assumed. The contract based upon a valuable consideration provides in part:

"This contract includes regular systematic examination, adjustment and lubrication as required and if conditions necessitate, repairing or replacing of the following:

"Elevator Machine, Motor, Generator and Controller parts including mechanical parts, Gears, Worms, Bearings, Thrusts, Brake Magnet Coils or Stators, Brake Shoes and Linings, Commutators, Brushes,

Windings, Contacts, Magnet Frames, Coils, Rotating Elements and Resistance for Motor and Operating Circuits.

"Under the terms and conditions of this contract we will maintain the entire elevator equipment as herein described, using skilled elevator maintenance men under our direct employment and supervision. They will employ all reasonable care to see that the elevator equipment is maintained in proper and safe operating condition.

"Among the services we agree to render are the following:

"Examine all safety devices and governors periodically."

Similar contracts have been construed by the courts. Wolfmeyer v. Otis Elevator Co., Mo., 262 S.W.2d 18; Otis Elevator Co. v. Embert, 198 Md. 585, 84 A.2d 876, 883. The contracts construed in the foregoing cases seems to be similar to the one that we are now considering. In the Embert case the court stated:

"Otis' contract to use care 'to maintain the entire elevator equipment' means what it says and no more. 'Maintenance' does not include operation or supervision of operation or advice regarding operation. * * * Otis' undertaking was not to make the elevator a different kind of elevator or to insure it against improper or negligent operation. The scope of Otis' undertaking is limited to maintenance, as distinguished from operation * * *."

In the Wolfmeyer case, 262 S.W.2d at page 23, the following appears:

"The contract whereby defendant was to furnish Otis maintenance did not contain any express provision or clause by which defendant was to reconstruct or rebuild or modernize the elevator or install any new part (except as a replacement), nor did the contract expressly provide for any service except service to the elevator as it was when defendant began to furnish its maintenance service. There was no contractual provision obligating defendant to construct or install safety appliances or attachments, and there was no evidence introduced tending to show that defendant otherwise voluntarily assumed to make any new safety installations. * * * It has been said that the word 'maintain' means 'to keep up; to keep from change; to preserve; to hold or keep in any particular state or condition'. * * * *"

It is clear that the contract we are here considering is a maintenance contract, and that Haughton was not obligated to modernize the elevator by installing new or additional safety devices or to recommend such devices. Its duty was to maintain the existing equipment.

The plaintiff and Blackhawk contend that Haughton was negligent in performing duties called for by its contract in six respects, which contentions we will now discuss. It is urged that the car control switch which was used to move the elevator up and down and to stop the same was not working properly. The switch worked properly before the accident, and tests made after the accident showed it to be working properly. The only reason given by any one why the switch did not function at the time of the accident was the statement by Haughton's expert witness that, due to the peculiar construction of the elevator, when the generator stop button was pushed the car would not stop unless the lever was set in neutral. The generator stop and the emergency stop buttons are located near each other. While Blackhawk's operator denies that he touched the generator stop button, Haughton contends that he must have done so because of the results that followed. The fact that applying the generator stop would interfere with the functioning of the car control switch was something inherent in the construction of the elevator. More modern devices were available to eliminate such a consequence, but it was no duty of Haughton to install such new equipment.

In any event, it would seem that the complete answer to the contention that there was a defect in maintaining the car control switch is the fact that it operated in the manner that it was designed to before the accident and in the extensive tests made after the accident. Further complaint is made about the condition and functioning of the emergency stop button. The after accident tests demonstrate that this device worked perfectly. The same can be said of the car limit switch.

A more serious problem arises in connection with the final limit switch. This switch is located near the bottom of the pit and is activated by the elevator cab touching a rubber roller. After the accident it was discovered that a piece was broken off this roller. There is testimony that this switch may not have functioned because of the broken roller. The only damaged parts of the elevator discovered after the accident were the broken roller and a guide shoe. Haughton's witnesses insist that the damage to the roller occurred in connection with the crash. There is no satisfactory evidence to the contrary. Blackhawk relies upon the weathered appearance of the damaged portion of the roller at the time of the trial to show that the break occurred prior to the accident. None of the many people who had inspected the scene of the accident immediately thereafter described the appearance of the roller. After the accident Kelly, the safety inspector who participated in the tests, said he was unable to say whether the roller was damaged before or by the accident. Blackhawk's general manager at the trial testified that the roller was in the same condition as it was immediately after the crash. As to this evidence the trial court stated:

" * * * Undoubtedly the final limit switch did not function, but to predicate a finding of liability of Haughton on the physical condition of the roller as it appeared to be after the accident is to substitute mere conjecture for proof. It is just as probable that the roller was in good condition and was broken at the time of the accident as it is to speculate that it was worn or broken before the accident, and the mere physical appearance of the broken roller some year and a half after the accident will not justify any conclusion as to the break being old or new."

We agree with the trial court that Blackhawk has not produced substantial evidence to show that the roller break had occurred before the accident. Evidence which is equally consistent with two conflicting hypotheses tends to support neither. Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F.2d 203, 205–206, and cases cited.

The elevator was equipped with a governing device which was designed to stop the elevator if it traveled too fast. After the accident it was ascertained that the governor activated at a speed of 600 feet per minute. The normal speed of the elevator was 400 feet per minute. The expert testimony is to the effect that the governor is usually set to activate at a speed of 24 to 40 per cent above its normal running speed. There is no direct evidence of the speed at which the elevator was falling. The circumstantial evidence is likewise unsatisfactory. The testimony is that the elevator fell rapidly, that there was a tremendous crash, and that it was going too fast. The only testimony that even remotely tended to show the elevator was going over 560 feet a minute is that given by Conklin, Blackhawk's supervising engineer, who testified as follows:

"Question by the Court: I am interested in knowing, do we have any evidence here whether or not the elevator was going over 560 feet per minute when it struck."

"The Witness: The force of the fall would indicate that."

"The Court: Are you able to tell from the force of the fall whether the elevator was going over 560 feet a minute? How can you tell that?"

"The Witness: The injuries sustained in this elevator."

We seriously doubt whether it would be possible for this witness from a casual observation of the damage to determine whether the elevator traveled at 500 feet per minute or 600 feet per minute. The testimony given by the other witnesses would be true whether the elevator was traveling 500 feet per minute or 600 feet per minute. No witness attempted to estimate the speed, nor was any effort made to indicate the probable speed through expert testimony or tests. On this contention the trial court held that the record lacked substantial evidence to show that the elevator was traveling in excess of 560 feet per minute, and that there was no basis for finding that the accident would have been avoided if the governor had been set to trip at a lower speed, and consequently the failure to set the governor to activate at a lower speed, even if it be assumed that such a setting was within the scope of the duties assumed by Haughton, could not constitute a proximate cause of the accident.

There is also a contention that the elevator was not adequately counterweighted. The counterweighting system in connection with the elevator was part of the original elevator installation. The same condition as to counterweighting has existed ever since Haughton assumed its maintenance duties. There is no evidence to show that there was any defective condition in connection with the counterweight arrangement or that the counterweights had any causal connection with the accident. Under the contract Haughton's only obligation was to maintain the elevator, not to make changes. We find nothing in the contract which required Haughton to change or improve the preexisting counterweight arrangement.

■ On the whole record the cause of the elevator fall can only be speculated upon. The evidence does not point with certainty to any particular thing which may have caused the accident. If there is substantial evidence to support any finding of negligence on the part of Haughton and such negligence was a proximate cause of the accident, the verdict should stand. After carefully examining the record we agree with the trial court that substantial evidence is lacking to establish that Haughton was guilty of any negligence which proximately caused the elevator to crash.

■ IV. Inasmuch as we have heretofore determined that there was a lack of evidence to support a finding that Haughton was guilty of any negligence which proximately caused or contributed to the happening of the accident, it necessarily follows that Blackhawk's claim for indemnity or contribution against Haughton was properly dismissed.

The judgments appealed from are affirmed.