**ARMCO STEEL CORPORATION, a corporation, Appellant,**

v.

**REALTY INVESTMENT COMPANY,**
Inc., a corporation, Appellee.

No. 16283.

United States Court of Appeals
Eighth Circuit.

Jan. 6, 1960.

Joseph E. Stevens, Jr., Kansas City, Mo., presented oral argument to the Court on behalf of appellant.

David Skeer, Kansas City, Mo., presented oral argument on behalf of appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Realty Investment Co., Inc., appellee-plaintiff, brought this action against Armco Steel Corporation, appellant-defendant, to recover a real estate broker's commission arising out of the purchase by the defendant of property owned by the Ford Motor Company. Diversity of citizenship and the amount involved meet jurisdictional requirements. This case was previously before this court in Realty Investment Co., Inc. v. Armco Steel Corp., 8 Cir., 1958, 255 F.2d 323, which involved an appeal from a summary judgment in favor of the defendant. This court reversed and remanded for trial. In so doing, we stated:

> "By summary judgment, the appellant here has been denied its day in court and the opportunity to establish, if it can, that it had been employed by appellee to arrange for the purchase of the Ford plant and that it was the procuring cause of such purchase by appellee." Realty Investment Co., Inc. v. Armco Steel Corp., supra, 255 F.2d at page 329.

Upon remand, the case was tried to a jury. At the close of all the evidence, defendant moved for a directed verdict, which motion was denied. The jury rendered a verdict in favor of Realty Investment Company in the amount of $4,208.-33. Defendant then moved to set aside the verdict and for judgment in accordance with its motion for directed verdict, which motion was also denied. Defendant now appeals from the final judgment based upon the jury verdict and cites as error the rulings on its two motions. Herein the parties will be designated as they were in the court below.

The defendant urges: (1) That the trial court erred in overruling its motions because the evidence failed to show that defendant employed the plaintiff to procure the purchase of the Ford plant; and (2) that the trial court erred in overruling the defendant's motions because, even if the plaintiff were so employed, the evidence failed to show that it was the procuring cause of the purchase of the plant.

In answering defendant's two contentions, plaintiff points out that this court held in the prior appeal that it was error to grant summary judgment because genuine issues of material fact existed on the questions of whether or not plaintiff was employed by the defendant and, if so, whether or not it was the procuring cause of the transfer. Plaintiff then asserts that, therefore, this court is now precluded from reversing the lower court's subsequent denial of the motions for directed verdict and judgment notwithstanding the verdict because the same evidence was submitted at the trial as that on which the former ruling was predicated, with the exception of certain additional evidence favorable to the plaintiff alone. Plaintiff's contention that, if it was error to grant summary judgment, then it would likewise be error to direct a verdict or grant a motion for judgment notwithstanding the verdict, is not sound.

 A genuine issue of fact exists for the purpose of avoiding a summary judgment whenever there is the slightest doubt as to the facts. Gottlieb v. Isenman, 1 Cir., 1954, 215 F.2d 184, 186; Mitchell v. Pilgrim Holiness Church Corp., 7 Cir., 1954, 210 F.2d 879, 881; Shafer v. Reo Motors, 3 Cir., 1953, 205 F.2d 685, 688; Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 468; Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135. As we have heretofore explained, summary judgment is a harsh remedy and,

> " * * * should never be entered except where the defendant is entitled to its allowance beyond all doubt; only where the conceded facts show defendant's right with such clarity as to leave no room for controversy; with all reasonable doubts touching the existence of a genuine issue as to a material fact

resolved against the movant; giving the benefit of all reasonable inferences that may reasonably be drawn from the evidence to the party moved against. 'That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them.' Sprague v. Vogt, 8 Cir., 150 F.2d 795, 801; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213; Union Transfer Co. v. Riss & Co., 8 Cir., 218 F.2d 553; Caylor v. Virden, 8 Cir., 217 F.2d 739." Northwestern Auto Parts v. Chicago, B. & Q. R. Co., 8 Cir., 1957, 240 F.2d 743, 746, certiorari denied, 355 U.S. 815, 78 S.Ct. 16, 17, 2 L.Ed.2d 32.

Similarly, Judge Sanborn stated for this court in Union Transfer Co. v. Riss & Co., 8 Cir., 1955, 218 F.2d 553, 555, wherein we reversed a summary judgment:

"Assuming the credibility of Grantski and viewing the testimony given by him in his deposition in the light most favorable to the plaintiffs, we are unable to say that the issues tendered by them were so sham, frivolous or unsubstantial that it would obviously have been futile to try them. The claim asserted by the plaintiffs may be groundless, as the District Court thinks it is, but, if so, its groundlessness does not, in our opinion, so clearly appear as to make a summary judgment an appropriate means of terminating the case.

"* * * Whether at a trial the plaintiffs will be able to establish their claim that the defendant was a bailee for mutual benefit and was guilty of actionable negligence is questionable. We go no further than to say that, in our opinion, they are entitled to make the attempt."

When, however, both parties have had an opportunity to adduce all relevant, available evidence so that the trial court is no longer uncertain as to the circumstances of the case, then slight doubt as to the facts is insufficient to avert a directed verdict or a judgment notwithstanding the verdict. Rather, at that time, if it appears that a jury verdict for one of the parties could rest on no substantial evidence or that it would be against the clear weight of the evidence, a motion for directed verdict or judgment notwithstanding the verdict must be granted. Blackhawk Hotels Co. v. Bonfoey, 8 Cir., 1955, 227 F.2d 232, 237, 56 A.L.R.2d 1047; Lovas v. General Motors Corp., 6 Cir., 1954, 212 F.2d 805, 807; Baltimore & Ohio R. R. Co. v. Postom, 1949, 85 U.S.App.D.C. 207, 177 F.2d 53, 54; Butte Copper & Zinc Co. v. Amerman, 9 Cir., 1946, 157 F.2d 457. In summary:

"Even in cases where the judge is of the opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, * * *." Pierce v. Ford Motor Co., 4 Cir., 1951, 190 F.2d 910, 915.

With that in mind we now consider this record, unfettered by the prior ruling reversing the summary judgment. In so doing, we are required to view the evidence in the light most favorable to sustaining the jury verdict and to give to the appellee the benefit of all inferences that reasonably may be drawn in its favor. Chicago Great Western Ry. Co. v. Scovel, 8 Cir., 1956, 232 F.2d 952, 955; Sisco v. McNutt, 8 Cir., 1954, 209 F.2d 550, 552.

█ Plaintiff is a corporation engaged in the real estate business. Throughout all the negotiations herein it was represented by one Jack Seligson, employed by it as a real estate salesman.

In 1954, Seligson learned that the Ford Motor Company plant in Kansas City, Missouri, might be available for purchase and made inquiries with reference thereto. These inquiries continued until April, 1956, at which time Seligson learned that the Ford Motor Company had definitely decided to sell the Kansas City property and that he should contact a Mr. Powell at Ford's Dearborn, Michigan, office for additional information.

In viewing the Ford property sometime during 1956, Seligson noticed that it was located directly across the railroad tracks from part of the defendant's plant. Among others, he then communicated with the defendant and was referred to Mr. R. F. Kuhnlein, at that time superintendent of construction, assistant division manager, and special assistant to the president of the division. Seligson asked Kuhnlein if the defendant would be interested in the Ford property. Kuhnlein replied, "Don't kid yourself. That property is not available." He further stated that several years previously the defendant had contacted Ford and tried to buy the property and had been advised that the plant was not available and never would be so. Seligson in turn advised Kuhnlein that the situation had changed and that he had reason to believe that the property would be for sale. Kuhnlein then said, "Well, if it is available, we want it by all means. Get it for us." Seligson replied, "Okeh, we will." Kuhnlein asked Seligson to furnish him with a "complete breakdown" as to what buildings, land and other installations might go with the property. Other parties who had been contacted by Seligson with reference to purchasing the Ford plant were then advised by him that he could no longer represent them. Thereupon Seligson wrote to Powell of Ford's Dearborn office requesting complete information. He received a reply from a Mr. Anderson stating in substance that Ford was in the preliminary stage of forming an opinion of the market value of the property prior to placing it up for sale; that it believed it would be in a position to discuss a sale in about 60 days; that Seligson should contact them at such time; and that it would then "* * * give you enough information so you can present the property to your purchaser." The letter also stated that the terms of sale were generally cash with the possibility of short terms depending entirely upon who the purchaser might be; that Ford had no interest in leasing the property unless it was unable to sell it; and that the earliest possession date would be sometime in February, 1957.

Upon receipt of the Ford Motor letter, Seligson called Kuhnlein and told him of it. Kuhnlein still indicated disbelief that the property was available for purchase. Seligson then read the letter from Ford to him, after which Kuhnlein asked Seligson to send him the letter. Seligson agreed to send a photostatic copy to which Kuhnlein consented. At the same time Kuhnlein mentioned that there must be other brokers and other real estate people interested in the Ford property. Seligson replied that such didn't make any difference because he considered Armco his customer. Kuhnlein then stated, "Okeh, send me the letter and information, and see I get it." That same day Seligson had a photostatic copy of the Ford letter made and sent to Kuhnlein, together with a letter of transmittal dated June 8, 1956.

Immediately after the conversation between Kuhnlein and Seligson, Kuhnlein prepared an office memorandum which he circulated to other Armco officials. In it he stated as follows:

"Jack Selingson of the Realty Investment Company, Emerson 1–3876, called me this morning and asked if we would be interested in buildings and real estate for possible expansion at Kansas City. He was talking about the Ford Motor Company Plant at 12th and Winchester. He has received a letter from the Ford Motor Company advising that they are now in the process of preparing fair market values for this property

and that this complete information will be available to him within sixty days. The Ford Motor Company, he said, indicated occupancy of this property could be expected no earlier than February, 1957. Mr. Seligson has a letter from Ford dated June 5, 1956 setting out this information. I have asked him to put this in a letter and attach a copy of the Ford Motor Company letter.

"In discussing the apparent lack of interest in the Ford Motor Company in disposing of this property, Mr. Seligson indicated that they had been required by the government to hold the property at 12th & Winchester in standby condition for possible defense use. It was Mr. Seligson's understanding that this stipulation has now been lifted and Ford is free to handle the property as they see fit. If this is true, it could account for the delays and lack of information which we have encountered concerning this property."

In the weeks following the letter of June 8, 1956, to which Seligson received no reply, Seligson attempted to call Kuhnlein a number of times. He was never able to reach him and Kuhnlein failed to comply with Seligson's requests to return his calls. Seligson also wrote two letters to the Ford Motor Company official with whom he had previously corresponded asking for more information which requests, likewise, met with no response.

Mr. Anderson of the Ford Motor Company testified that on August 1, 1956, he contacted agents of the St. Louis-San Francisco Railroad, which line served the Ford plant in Kansas City, for the purpose of having them introduce to Ford possible purchasers of the property. The railroad agents, he stated, sometime after August 16, 1956, " * * * brought an invitation from Sheffield (Armco) to me with them * * * ". When asked if he recalled telling the railroad that he already had knowledge from Seligson that Armco had evinced interest in the property, Anderson replied that he did not

recall "but there may have been such a thing said to him." At a meeting on August 21, 1956, with Kuhnlein as one of the officials representing Armco and Anderson representing Ford, the sale of the property by Ford to Armco was arranged. The actual contract of sale was signed October 11, 1956. For a more detailed statement of the evidence, see this court's opinion in 255 F.2d 323.

As to the defendant's first point, we are of the opinion that there was sufficient evidence from which the jury could conclude that the defendant employed the plaintiff to procure the purchase of the Ford plant. Defendant had been interested in acquiring the plant some years before but had been told that it was unavailable and never would be available for sale. When Seligson advised Kuhnlein that the situation had changed and offered his services, Kuhnlein replied that they wanted the property and that, if it was available, he should acquire it for them and that he should furnish them with a complete break-down thereon, to all of which Seligson agreed. A clear statement of the applicable law of Missouri is set forth in Murphy v. Knights of Columbus Bldg. Co., St. Louis, 1911, 155 Mo.App. 649, 135 S.W. 446, 449, where the court stated:

"Real estate agents are not confined to the business of finding purchasers for owners. They may be engaged as agents to find suitable property for those who wish to purchase; in which case, if there be no stipulation to the contrary, the presumption is they are to be compensated by the purchaser. According to the evidence, Rohan called and asked Murphy, one of the plaintiff firm, to go out and find a suitable site for defendant's need, which Murphy did. And, when Murphy called to see Rohan about plaintiffs' compensation after defendant had acquired the property, Rohan did not suggest that plaintiffs had not been employed by him, but at first suggested that McDonald, and not Murphy, had brought the property to

**488**

his attention and later conceded that Murphy was the first one to find the property. This evidence tended to prove that Rohan employed the plaintiffs."

Here, Kuhnlein told Seligson that if the property was available the defendant wanted it and that Seligson should "get it for us". Clearly, there was sufficient evidence to justify submitting the matter to the jury and the trial court committed no error thereon. Ballentine v. Mercer, Kansas City, 1908, 130 Mo.App. 605, 109 S.W. 1037; O'Neal v. Mavrakos Candy Co., Mo.App., Kansas City, 1952, 255 S.W.2d 138, affirmed, 364 Mo. 467, 263 S.W.2d 430.

█ We next concern ourselves with appellant's second point, which is that the trial court erred in overruling its motions because the evidence failed to show that plaintiff was the procuring cause of the purchase. Here, too, we conclude that the situation presented a question of fact for the jury's determination. How we think that question should have been resolved is of no moment, provided there was sufficient evidence in the case upon which to base the jury's verdict. Neither the trial court nor this court may substitute its judgment for that of the jury on disputed fact issues.

█ It is, of course, essential to recovery by the plaintiff that it have been the "procuring cause" of the purchase of the Ford plant by the defendant. The law of Missouri with reference thereto is well stated in Rogers v. McCune, Mo. App., St. Louis, 1955, 283 S.W.2d 872, 877:

"For an agent to recover a commission upon the sale of property of his principal it is not sufficient that his act is one of a chain of causes producing the contract—it must be the procuring and inducing cause. The terms 'procuring cause' and 'inducing cause' refer to the cause which originates a series of events which without break of continuity result in the accomplishment of the object of the employment of the agent. Williams v. Mashburn, Mo. App., 37 S.W.2d 478; Gamble v. Grether, 108 Mo.App. 340, 83 S.W. 306; Crain v. Miles, 154 Mo.App. 338, 134 S.W. 52; Kyle v. Kansas City Life Ins. Co., 356 Mo. 331, 201 S.W.2d 912; Ramsey v. West, 31 Mo. App. 676; F. H. & C. B. Gerhardt Real Estate Co. v. Marjorie Real Estate Co., 144 Mo.App. 620, 129 S.W. 419; Nooning v. Miller, 178 Mo.App. 297, 165 S.W. 1119; Real Estate Enterprises, Inc. v. Collins, Mo. App., 256 S.W.2d 286; Young v. Stecher Cooperage Works, 259 Mo. 215, 168 S.W. 611; Westerman v. Peer Inv. Co., 197 Mo.App. 278, 195 S.W. 78; Good v. Robinson, 194 Mo. App. 453, 184 S.W. 955."

The evidence here tended to show and the jury so found that the defendant did employ the plaintiff to "get" the Ford plant for it if it were available. After desiring to purchase the Ford plant for a number of years and believing it to have been entirely unavailable, defendant learned for the first time through the plaintiff that the plant was going to be for sale. Still dubious but wanting the plant if it could get it, defendant instructed the plaintiff to proceed with negotiations. Thereafter defendant learned from plaintiff that Ford was preparing to offer its Kansas City plant for sale in approximately 60 days and defendant was further informed of some of the terms of sale and of the possession date. The jury could well have given significance to Kuhnlein's memorandum to other Armco officials following receipt of this information and to his finally having accepted as a fact that the Ford plant was available for Armco if it wanted it. Up to that time Kuhnlein had dealt openly with Seligson and been available to him on the telephone. Suddenly, after Kuhnlein had the desired information, he refused to talk with Seligson on the telephone or return his calls, and within a very short time thereafter Kuhnlein and his co-officials arranged for and consummated the purchase of the Ford plant.

We think the jury had a right to believe under these circumstances that Seligson was the procuring cause of the purchase.

A real estate agent is entitled to his commission on a purchase or sale if he is the procuring cause, even though the parties consummate the sale themselves. Studt v. Leiweke, Mo.App., St. Louis, 1937, 100 S.W.2d 30, 33; Glassman v. Fainberg, Mo.App., St. Louis, 1931, 35 S.W.2d 950, 953. The rule is stated in May v. Avansino, Mo.App., Kansas City, 1916, 185 S.W. 1178, 1180:

> "It does not follow that, because an agent employed to sell property does not have a part in the final negotiations or in the actual transfer, he should be deprived of his compensation. That would enable all employers of such an agent to enjoy the fruit of his labor without rendering any reward. When one wishes to sell real estate, the first thing, and the main thing, is to find a purchaser. If the agent employed to sell finds the purchaser, he has performed the principal service of his employment; and the fact that such purchaser falls in with the owner, and they conduct the negotiations and complete the sale, even at a different price, will not deprive the agent, who has been the cause of their meeting of his commission. Tyler v. Parr, 52 Mo. 249; Lane v. Cunningham, 171 Mo.App. 17, 153 S.W. 525; Millan v. Porter, 31 Mo. App. 563; Hovey v. Aaron, 133 Mo. App. 573, 113 S.W. 718."

Here by proper and full instruction the trial court left to the jury the determination of whether or not the plaintiff was the procuring cause of the defendant's purchase of the Ford plant. The jury having found, not only that the plaintiff had been employed, but that the plaintiff was the procuring cause of the purchase and such finding having been based upon substantial evidence, its verdict must stand.

Affirmed.