**Peter BUCHANAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 4–58–Civ.–420.**

United States District Court
D. Minnesota,
Fourth Division.

Jan. 31, 1961.

---

Emerson Hopp, Minneapolis, Minn., for plaintiff.

Fallon Kelly, U. S. Atty., St. Paul, Minn., and William S. Fallon, Asst. U. S. Atty., St. Paul, Minn., for the United States.

DEVITT, Chief Judge.

Plaintiff brings this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) [1] for personal injuries sustained on January 28, 1958, as the result of an elevator accident at the Twin Cities Arsenal at New Brighton, Minnesota.

The Twin Cities Arsenal was built by the government during World War II. Since that time, the United States has contracted with the Federal Cartridge Corporation, a private corporation, for the manufacture of ammunition at the Arsenal. On the day of the accident, plaintiff was an employee of Federal Cartridge. He was injured in Building No. 502 at the Arsenal when the elevator or dumbwaiter in which he was riding fell about 14 feet as the result of a broken cable. The controls for operating the lift were situated outside of the shaft on the wall. It was shown that if a person got on the lift to ride, he would have to close a gate and then reach several feet outside the lift and press a button on the wall to start the lift in motion. There were no inside controls. The plaintiff had several hundred pounds of metal on the elevator at the time of the accident, but the total weight on the elevator did not exceed the maximum capacity. The plaintiff was severely injured, particularly on both feet.

Since the accident, the plaintiff has been receiving benefits under the Minnesota Workmen's Compensation Act, M.S.A. § 176.01 et seq. To the time of trial a total of $11,292.74 had been paid to plaintiff or for his benefit. Of this total, $4,397.77 was for medical expenses.

The contract in force on the day of this accident between the United States and Federal Cartridge provided that " * * * the Contractor will provide and maintain for all employees of the Contractor engaged in work under this contract, Workmen's Compensation Insurance, * * * and shall be reimbursed for the cost thereof as provided herein." Testimony at the trial indicated that under this provision, the United States will reimburse Federal Cartridge and its com-

[1] "(b) * * * the district courts, * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

pensation carrier for all money expended for plaintiff's benefit.

In defense, the government contends that, since Federal Cartridge was an independent contractor, negligence, if any, was that of Federal Cartridge, and the government cannot be held responsible for the negligence of an independent contractor. It also asserts contributory negligence and assumption of risk.

■ Plaintiff disputes the government's assertion that Federal Cartridge is an independent contractor and contends that employees of Federal Cartridge were employees of the government. The determination of this question is governed by the law of Minnesota. Massachusetts Bonding & Insurance Co. v. United States, 1956, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189.

■ Under that law there's no question but that Federal Cartridge was an independent contractor. The corporation has had almost complete control of the government facilities at the Twin Cities Arsenal for many years, and the contract provided that responsibility for production and for maintenance of the buildings lay with Federal Cartridge. While the terms of the written contract[2] do not in themselves determine the question of whether Federal Cartridge was an independent contractor, see Gill v. Northwest Airlines, Inc., 1949, 228 Minn. 164, 36 N.W.2d 785, substantial weight should be given the provisions of the contract. It is clear that Federal Cartridge meets all ten tests[3] listed in Gill v. Northwest Airlines, Inc., supra, for the determination that it is an independent contractor. It is true that the government had the right to inspect the extent and character of Federal Cartridge's work, but as the Minnesota Supreme Court said in Larson v. LeMere, 1945, 220 Minn. 25, 32, 18 N.W.2d 696, 700:

"The real test, however, 'as to whether a person is an independent contractor or an employee is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details or work are to be performed' (Nesseth v. Skelly Oil Co., 176 Minn. 373, 374, 223 N.W. 608), as distinguished from the right which every owner or general contractor has to supervise and co-ordinate the general work. Finn v. Phillippi Bros., 211 Minn. 130, 300 N.W. 441; Erickson v. Kircher, 168 Minn. 67, 209 N.W. 644; 6 Dunnell, Dig. & Supp. § 10395."

See Powell v. United States Cartridge Co., 1950, 339 U.S. 497, 507, 70 S.Ct. 755, 94 L.Ed. 1017.

■ We next consider whether the United States as an employer and land-

---

2. "Title I, Article 1–B,
   "1. The Contractor, as an independent contractor and not as an agent of the government, shall * * * hire and furnish all personnel, labor, equipment, supplies, materials, consultation, engineering and other services, * * *.
   "6. The extent and character of the work to be done by the Contractor * * shall be subject to the approval of the contracting officer to whom the Contractor shall report and be responsible * * *.
   "Title II, Article II–A, * * *
   "13. * * * Maintenance of all government property in possession of the Contractor shall be the responsibility of the Contractor.
   "16. The Contractor shall maintain the Plant, or any portion thereof, in ei-
   
   ther standby or caretaker status, as may be ordered by the contracting officer.
   "Article IV–OO, It is the understanding and intent of the Contracting parties that the Contractor will endeavor to maintain the maximum degree of safety at all times in the operation of this plant. The Contractor shall comply with all applicable provisions of local, state and federal ordnances (sic), laws and building and construction codes * * *."

3. "(1) Control of the work; (2) control of the premises; (3) control over the means of performances; (4) nature of the work done; (5) supervision of work; (6) control of personnel; (7) furnishing of personnel and material; and (10) procurement of insurance covering personnel, social security payments, and like items."

lord can be held liable for the negligent acts of an independent contractor.

 It is the general rule in Minnesota that an employer is not liable for the acts of an independent contractor or its servants albeit there are many exceptions to this rule. Lamb v. South Unit Jehovah's Witnesses, 1950, 232 Minn. 259, 45 N.W.2d 403, 406, 33 A.L.R.2d 1. The main test is the degree of control the employer has over the time, place and manner of performing the work of the independent contractor. See Mix v. City of Minneapolis, 1945, 219 Minn. 389, 18 N.W.2d 130, 136. It is clear that in this case the government had little, if any, control over the acts of Federal Cartridge except to inspect the final result. See Kirk v. United States, 9 Cir., 1959, 270 F.2d 110, 116; Hopson v. United States, D.C.W.D.Ark.1956, 136 F.Supp. 804, 813.

It is true, as plaintiff asserts, that in some instances an owner of land cannot delegate to an independent contractor his duty of care to the public. A significant difference exists, however, between the facts in this case and in those in Lamb v. South Unit Jehovah's Witnesses, 1950, 232 Minn. 259, 45 N.W.2d 403, in which a passerby was injured after an independent contractor negligently refilled a hole in a sewer installation leading from a church under the public sidewalk to the street. We have in this case the situation where an employer-landlord, some fifteen years before the accident, turns over its apparently safe property, see generally Breimhorst v. Beckman, 1949, 227 Minn. 409, 35 N.W.2d 719; Wood v. Prudential Ins. Co. of America, 1942, 212 Minn. 551, 4 N.W.2d 617, to an independent contractor who had control of the premises with the duty to keep it in good condition. See Potter v. City of Kenosha, 1955, 268 Wis. 361, 68 N.W.2d 4, 10. The government is not liable for the negligent acts, if any, of Federal Cartridge Corporation.

 Plaintiff also contends that the doctrine of res ipsa loquitur is applicable here. This claim is without merit since the elevator in question was not within the exclusive control of the defendant. Johnson v. Coca-Cola Bottling Co. of Willmar, Inc., 1952, 235 Minn. 471, 476, 51 N.W.2d 573, 576.

 Finally, it appears that the plaintiff was contributorily negligent. As previously stated, the controls for the elevator were located outside of the shaft on a wall. From this and other evidence, it was obvious that the lift was meant to carry materiel'—not people. The testimony indicated that while some men occasionally rode the elevator, it was not a common practice, and the word had been "passed down" prohibiting such riding. Under these circumstances, the plaintiff himself was negligent in using the lift for his own transport.

The complaint is dismissed.