# GENEVA KIMBALL v. CITY OF ST. PAUL and Another.[1]

December 31, 1914.

Nos. 18,908—(150).

**Defect in street — charge to jury — notice to city.**
Second street in the city of St. Paul extends along the brow of the bluff fronting the Mississippi river. Defendant railway company had dug away the face of the bluff up to, or nearly up to, the curb on the south side of the street, and defendant city had full knowledge thereof. A heavy truck driven by plaintiff's intestate backed against the curb, which gave way and precipitated the truck and driver to the bottom of the bluff, killing the driver. *Held:* That the curb was a part of the street; that whether the support of the curbing had been so weakened as to create a dangerous defect in the street was a question for the jury; that an instruction to return the same verdict as to both defendants was correct; that the verdict is sustained by the evidence; and that no errors appear in the record.

Action in the district court for Ramsey county by the administratrix of the estate of Cyrus Kimball, deceased, to recover $7,500 for the death of her intestate. The case was tried before Dickson, J., who when plaintiff rested denied separate motions of defendants to dismiss the action, and a jury which returned a verdict for the amount demanded. From the judgment entered pursuant to the verdict, defendants appealed. Affirmed.

*O. H. O'Neill, John A. Burns* and *W. J. Giberson,* for City of St. Paul.

*George W. Peterson* and *James B. Sheean,* for Chicago, St. Paul, M. & O. Ry. Co.

*Frank Haskell,* for respondent.

TAYLOR, C.

Second street in the city of St. Paul extends in an easterly and westerly direction along the brow of the bluff which faces the Mis-

[1] Reported in 150 N. W. 379.

sissippi river. Minnesota street is one of the intersecting streets which extends northwardly from Second street. Both streets are paved and bear a large amount of traffic. Second street is paved with sandstone blocks laid upon a concrete foundation, and is curbed with granite curbing extending five or six inches above the paving. The bluff is composed of a soft sandrock and descends abruptly for about 60 feet. The curbing along the top of the bluff on the south side of Second street was set in a shallow trench in this sandrock. Defendant railway company owns the land abutting Second street on the south, including the face of the bluff and the land at its base. In 1892, the company dug away and removed a considerable portion of the base and front of the bluff, and constructed freight yards and a freight depot at its foot. They cut the top of the bluff to within about five feet of the curb line on Second street. Since that time the elements have disintegrated the sandrock, of which the face of the bluff is composed, to such an extent that portions of it have necessarily been removed, from time to time, to prevent it from falling and injuring persons at work in, or having business at, the freight yards. For this reason the top of the bluff had been cut away by the railway company until, at the time of the accident, the edge or brink of the bluff, at the place of the accident, was within a few inches of the curb on the south side of Second street. From this point the face of the bluff sloped downward at an angle of about 45 degrees. In September or October, 1912, the railway company built a fence along the curb on the south side of Second street about three feet and six inches high above the curb. Posts seven feet in length and about eight feet apart were set in the sandrock outside of and against the curbing and were clamped to the curbing. A cap-timber four inches thick and six inches wide was nailed upon the top of the posts, and two planks or boards were nailed between the cap-timber and the curb. In addition to the undisputed facts above recited, there was also testimony tending to prove that the sandrock, outside of and underneath the curbing, had become eroded, or been removed, to such an extent that there was an open space of some two inches between the outer edge of the bottom of the curbing and the sandrock upon which it rested.

Plaintiff's husband, Cyrus Kimball, was a teamster driving a two-horse truck for the Crescent Creamery Company. On the morning of June 8, 1913, he started from the loading platform of the creamery company's building on Minnesota street, near Second street, with a load which, including the truck, weighed slightly over three tons. There was no brake upon the truck. He proceeded along Minnesota street to Second street, turned west up Second street, and proceeded up a grade upon that street for a distance of 25 or 30 feet beyond the west line of Minnesota street when his team stopped. Why they stopped is not disclosed with any certainty. A moment later the truck, turning somewhat, backed against the curb and fence, hereinbefore described, which gave way, and the truck, team and driver were precipitated to the bottom of the bluff, a fall of about 60 feet. Mr. Kimball was killed, and plaintiff, as administratrix of his estate, brought this suit for damages against both the city and the railway company. She recovered judgment against both in the district court, and both appealed therefrom.

The complaint alleged, in substance, that the railway company negligently excavated a portion of the cliff wall, and caused the same to be weakened to such an extent that it was dangerous for teams to pass over Second street; that defendants negligently constructed a guard railing along the southerly side of Second street without proper foundation, and resting upon sandrock that was flush with the top or edge of the bluff, and without proper braces or supports to prevent the guard railing from falling over the bluff when pressure was applied upon Second street at the place of the accident; that the city negligently constructed Second street too close to the edge of the bluff for the same to sustain the weight of traffic without great danger to the drivers of vehicles traveling thereon; and that defendants negligently failed to inspect and ascertain the condition of said street and to keep it in proper condition for the public to travel safely.

The court submitted the case to the jury in a very clear and accurate charge, in which he carefully defined the rights and duties of both defendants, and the facts which must appear in order to

128 M.—7.

charge them with liability for negligence. Among other things, he said:

"There is no duty resting upon either of the defendants to build a fence which in and of itself would be strong enough to withstand the force of a load of this kind backing up against it with force as this load is shown to have done. The degree of care required of either of the defendants is not so great as to require a fence that would absolutely stop a load of that kind when backed with violence against it; nor does the city provide curbs for the purpose of brakes or for the purpose of stopping a wagon which is being backed up. The curb is not designed or prepared for that purpose, and the city is not obliged to prepare a fence or a curb that would be strong enough to withstand the force of a load of this kind backing down against it, and the only question, as I have said before, is whether or not the lateral support, the side support of this street, had been so weakened through the operations and excavations of the defendant company here, that some portion of the street upon which a traveler had a right to rely as being safe and reasonably substantial gave way and went down, and for that reason precipitated Mr. Kimball over the cliff. That is the real question in the case.

"If you are unable to find a fair preponderance of the evidence that any usable portion of this street, any portion of it which a traveler had a right to rely upon as being reasonably safe, was weakened and caused to give way on account of the manner in which the Omaha Railroad Company excavated this cliff—I say, if you are unable to find that from a fair preponderance of the evidence, your verdict will have to be in favor of both of the defendants in this case. But if, from a fair preponderance of the evidence, you are able to find that by reason of the manner in which this cliff was excavated, some portion of the street upon which a traveler had a right to rely as being reasonably safe, was weakened and caused to give way, and on account of that Mr. Kimball was precipitated over the precipice and was killed, and also find that he was in no manner guilty of a failure to use ordinary care for his own safety under the circumstances at that time, then you will be obliged to return a verdict in favor of the plaintiff."

Defendants insist that no cause of action was established, for the reason that the roadway and paving not only supported the load but remained intact after the accident, and that only the curbing and fence gave way. But we think that the curbing was a part of the street, and that the facts and circumstances, shown by the evidence, were such as to require the submission to the jury of the question whether the railway company had negligently so weakened the support of the curbing that it created a dangerous defect in the street. The case was carefully and fairly submitted to the jury upon this theory, and under instructions which are unchallenged; and the evidence is sufficient to sustain the verdict.

The court also charged the jury that their verdict should either be in favor of both defendants, or against both defendants. The cutting away of the bluff had been done by the railway company, but the city had full knowledge of the situation, and, under the evidence in this case, such an instruction was proper. Fortmeyer v. National Biscuit Co. 116 Minn. 158, 133 N. W. 461, 37 L.R.A.(N.S.) 569.

The instructions tendered by defendants, so far as correct, were sufficiently covered by the general charge.

No errors appearing, the judgment appealed from is affirmed.