## MAUDE E. BROWN AND ANOTHER
## v. JOE GUSTAFSON.

117 N. W. (2d) 763.

November 2, 1962—Nos. 38,462, 38,463.

---

[1]Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 116 N. W. (2d) 605.

*Gordon Rosenmeier* and *John E. Simonett,* for appellant.
*Ryan, Ryan & Ebert,* for respondents.

OTIS, JUSTICE.

One of the plaintiffs, Maude E. Brown, was a pedestrian at a time when she was injured in a fall on a defective sidewalk constructed for defendant, Joe Gustafson, an abutting property owner. The verdicts awarded damages to Mrs. Brown and her husband, and from an order denying his motion for judgment n. o. v. or a new trial defendant appeals.

It appears without dispute that in the year 1950 defendant contracted with one John E. Erickson to construct a new building in the city of Brainerd which required, among other things, the relaying of the adjacent sidewalk. This work was completed in the spring of 1951. Although the sidewalk was apparently free from defects as late as 1956, it is undisputed that at the time of Mrs. Brown's injury

a portion of it, abutting defendant's building, had subsided 2¼ inches, leaving a protrusion on which the plaintiff tripped and was injured on July 3, 1959. The reason for the defect in the sidewalk was in dispute. There is evidence from which the jury could find that the contractor who laid the walk was negligent in backfilling the area adjacent to the foundation upon which the concrete sidewalk was laid. It was plaintiffs' theory that defendant's contractor permitted rubble, including old pieces of foundation, to remain in the backfill, creating pockets or cavities, and that the soil was improperly tamped by the use of a 2 by 4 instead of being compacted by a so-called "vibratamp" or some other equally effective mechanical device. Plaintiffs attempted to show that as a result of the inadequate tamping, soil beneath the concrete gradually washed into pockets around the foundation and caused the sidewalk to subside.

It is defendant's contention that under well-established principles of law he is not liable even if the independent contractor was negligent. In addition he advanced the theory that the walk subsided by reason of weather and climatic conditions and that its repair was the sole responsibility of the city. There is no proof that defendant was himself guilty of any act or omission which created the hazardous condition. Erickson, the contractor, was not made a party defendant.

That it is the duty of the municipality to maintain its sidewalks in a safe condition is a proposition so fundamental it requires no extended discussion.[1] We have held that even where a municipality permits a private citizen to build his own sidewalk for public use in front of his premises, it remains the duty of the municipality to keep the walk in proper repair.[2] In those cases where the abutting owner has put the walk to a use which is of peculiar benefit to himself, not shared in general with the public, and through lack of proper repair and maintenance an injury to a pedestrian occurs, both the city and the abutting owner may be held liable.[3] It has been held that by remov-

---

[1]Scott v. Village of Olivia, 260 Minn. 346, 350, 110 N. W. (2d) 21, 25.
[2]Graham v. City of Albert Lea, 48 Minn. 201, 206, 50 N. W. 1108, 1109.
[3]Fortmeyer v. National Biscuit Co. 116 Minn. 158, 133 N. W. 461, 37 L. R. A. (N. S.) 569.

ing lateral support, creating a dangerous condition in a street or sidewalk, the owner may share liability with the municipality.[4]

The reason the contractor was not sued in the instant case is not clear. However, it appears that the city was not joined because of plaintiffs' failure to give notice of the accident within the 30 days prescribed by law.

Defendant relies on Sand v. City of Little Falls, 237 Minn. 233, 55 N. W. (2d) 49. We there held that an abutting owner was under no duty to repair a sidewalk which had become defective and dangerous by reason of the growth of roots which had gradually elevated a section of walk. However, in the Sand case we noted that the landowner retains a duty to maintain alterations in a reasonably safe condition where he has put the sidewalk to a use which is for his own benefit.

1. It is the contention of defendant that if he was negligent, the city's failure to inspect and correct the defect was an intervening, superseding cause which insulates him from liability, citing Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171. While the Goar case has been criticized as extending the rule of superseding causes to include passive as well as active negligence, we need not now align ourselves on one side or the other of that argument.[5] There a householder was injured when high-voltage electricity was transmitted into her home because the insulation on the municipal powerlines had been permitted to deteriorate. In an action brought against both the builder and the owner of the electrical system, we held that the builder had a right to assume the municipality would inspect and maintain the powerlines after it had accepted exclusive control of the system. Even though the village failed to accept this responsibility, the original tortfeasor was relieved of liability. In the Goar case there was no occasion for the original contractor to observe the condition of the system and its state of repair after it had relinquished control. Here, how-

---

[4]Kimball v. City of St. Paul, 128 Minn. 95, 150 N. W. 379; Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671.

[5]13B Dunnell, Dig. (3 ed.) § 7000i; see, also, Prosser, Torts (2 ed.) § 49, p. 280.

ever, the property owner was still in possession of the abutting property at the time the defect became evident and plaintiff was injured. We are of the opinion that so far as the instant case is concerned the rule in the Goar case does not apply. We need not decide the duration of the liability to which the original owner is exposed after title has passed and the owner is no longer in a position to notice the condition of the sidewalk.

2. As we view the matter, our decision hinges on the principles we discussed in Lamb v. South Unit Jehovah's Witnesses, 232 Minn. 259, 263, 45 N. W. (2d) 403, 406, 33 A. L. R. (2d) 1. The facts in the Lamb case may be distinguished only in so far as the property owner there had immediate notice of the dangerous condition on its boulevard which was created by an independent contractor who failed to refill a trench properly, thereby causing injury to a pedestrian. Here, the negligence of the independent contractor, if any, was concealed upon completion of his work and there is no evidence that the owner then had knowledge of any unworkmanlike performance. Nevertheless, the Lamb case established a doctrine which we feel here governs (232 Minn. 263, 45 N. W. [2d] 406):

"As a general rule, an employer is not liable for the acts of an independent contractor or his servants. However, * * * there are so many exceptions to the rule that an employer is not liable for the negligence of an independent contractor whom he employs 'that the rule is now primarily important as a preamble to the catalog of its exceptions.' * * * One of the exceptions is that of a person under a duty to the public to see that the work he is about to have done is carefully performed so as to avoid injury to others. In such case, the party causing the work to be done cannot, by letting it to a contractor, avoid liability in case the work is negligently done to the injury of another. The principle that a contractor may be employed to do a particular job under circumstances which leave the owner of premises charged with the duty which regularly attaches to him to see that the work does not endanger the safety of others, and that such absolute duty is nondelegable to an independent contractor, has been applied by this court in a number of similar cases."

One of the nondelegable duties which devolves on a property owner is set forth in Restatement, Torts, § 417, referred to in the Lamb decision. Although the record does not disclose whether or not a license to lay the sidewalk here in question was actually issued to defendant, it is the type of work which we believe is contemplated by the principle announced in § 417 as follows:

"One who employs an independent contractor to do work in a public place which

"(a)  unless carefully done involves a risk of making the physical condition of the place dangerous for the use of members of the public, and

"(b)  can only be lawfully done under a license given by a public authority,

is subject to liability for bodily harm caused to members of the public by a negligent act or omission of the contractor which makes the physical condition of the place dangerous for their use."[6]

In our opinion the general rule which imposes on a property owner only the duty of exercising reasonable care in selecting an independent contractor[7] and making an adequate inspection[8] does not relieve one in the position of defendant from the effect of his contractor's negligence, where the property owner has been accorded the privilege of using and reconstructing for his own convenience a public way such as the walk here in question.

As we have previously indicated, we do not now decide what effect, if any, the Goar decision may have in future cases where the city has accepted the owner's work and he is no longer in a position to observe

---

[6]See, also, Annotation, 33 A. L. R. (2d) 7, 47, and 27 Am. Jur., Independent Contractors, § 38:

"* * * This rule is sufficiently comprehensive to embrace, not only work which, from its descriptions, is 'inherently' or 'intrinsically dangerous,' but also work which will, in the ordinary course of events, occasion injury to others if certain precautions are omitted, but which may, as a general rule, be executed with safety if those precautions are adopted."

[7]Restatement, Torts, § 411.

[8]Restatement, Torts, § 412, § 422, *comment e.*

defects and take corrective measures or call them to the city's attention because he is not in possession.

3. Counsel for defendant quite properly argued to the jury that if defendant was liable his contractor, John Erickson, and the city of Brainerd were equally responsible for plaintiff's injury. By way of retort counsel for plaintiffs was permitted to state to the jury in his argument that "John Erickson and the City of Brainerd were not liable in this lawsuit and if they had been I would have sued them." Defendant takes the position that it is one thing to advise the jury that Erickson and the city were not parties to the lawsuit but quite another to state bluntly that they could not be sued. Since it is obvious that the contractor and the city[9] were indeed liable to the plaintiffs if defendant was himself found responsible, we hold that this statement of plaintiffs' counsel was misleading and prejudicial and, in the absence of an instruction which corrected it, a new trial is required.

4. Defendant also assigns as error the court's refusal to submit to the jury his claim that the defect was occasioned by weather or climatic conditions. Since defendant advanced this theory as a defense which, if proved, would relieve him of liability and leave only the city responsible, and there was some evidence to support it, he was entitled to a charge which would bring it to the jury's attention. Luther v. Standard Conveyor Co. 252 Minn. 135, 89 N. W. (2d) 179.

Reversed and remanded.

---

[9]We do not regard the city's nonliability because of plaintiffs' failure to give timely notice justification for refusing a corrective instruction.