**LAKEVIEW TERRACE HOMEOWNERS ASSOCIATION, Appellant,**

v.

**LE RIVAGE, INC., et al., Respondents,**

**Nina, Inc., Respondent,**

**Artison Construction Company, Defendant.**

**No. C9–92–1993.**

Court of Appeals of Minnesota.

March 30, 1993.

Edward L. Pardee, White Bear Lake, for appellant.

Dennis B. Johnson, Chestnut & Brooks, P.A., Minneapolis, David J. Kelly, Golden Valley, for respondents.

Considered and decided by HUSPENI, P.J., and RANDALL, and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge [*].

Appellant Lakeview Terrace Homeowners Association (Lakeview) sued respondents for damages caused by a defectively-built retaining wall. After a bench trial, the trial court concluded: (1) Artison Construction Company (Artison), which built the wall, is liable to Lakeview and respondent Nina, Inc. (Nina) for $36,394; (2) respondent How Sweet It Is (HSII) was not negligent in hiring Artison; and (3) Nina and Lakeview, as adjoining landowners, have a joint duty to share the costs occasioned by the collapsed wall. Both Lakeview and Nina made motions for amended findings of fact and conclusions of law, which the trial court denied. Lake-

view appeals the judgment and Nina filed a notice of review.

## FACTS

Lakeview owns a condominium complex in Oakdale, Minnesota. Lakeview's parking lot abuts a parking lot used by patrons of Blackie's Barbeque, a restaurant and bar. About 20 years ago, Lakeview built a six-foot retaining wall on its property on the edge of its parking lot and Blackie's parking lot.

In 1984, Le Rivage, Inc. bought all the assets of Blackie's and HSII bought the building and real estate where the restaurant is located. Le Rivage is a corporation whose sole shareholders are Vern and Alden Landreville, and HSII is a general partnership owned solely by the Landrevilles.

The Landrevilles undertook a major renovation of the premises. In April 1985, the Landrevilles attended Lakeview's board meetings where they proposed to build a retaining wall of about five feet, on top of the existing wall, so Blackie's parking lot could be paved. In the minutes of its meeting, Lakeview approved the construction.

HSII hired Artison to serve as general contractor in constructing the retaining wall. The trial court found HSII was neither negligent in hiring Artison nor knew while it owned the property there was a defect in the retaining wall.

In November 1988, Diba Sobhani and Hossein Tavakolean, as partners, bought the land and building by contract for deed from HSII. At the same time, Le Rivage sold its corporate assets to Nina, a corporation whose only shareholders at the time were Sobhani and Tavakolean. After the transaction, Sobhani transferred both his stock in Nina and his interest as a contract vendee of Blackie's real estate to Tavakolean.

On June 30, 1989, the retaining wall collapsed, causing damage to automobiles in the amount of $9,568. Lakeview incurred clean-up expenses of $2,460. The cost of a

---

Const. art. VI, § 10.

new retaining wall was estimated at $24,-366. After a bench trial, the trial court concluded Lakeview and Nina were entitled to judgment by default against Artison in the amount of $36,394, but Artison is apparently insolvent. The trial court also concluded that Nina and Lakeview were jointly liable for the damage amount.

## ISSUES

I. Is HSII, as owner of real property, liable for the negligent act of Artison, an independent contractor which negligently constructed a retaining wall?

II. Did the trial court err by finding HSII had not agreed to maintain and repair the retaining wall?

III. Did the trial court err by concluding the contract for deed, not the asset purchase agreement, governed HSII's sale of real property to Nina?

IV. Did the trial court err by concluding Nina and Lakeview should share in the costs of rebuilding the retaining wall?

## ANALYSIS

### I.

Generally, an employer is not liable for the acts or omissions of an independent contractor or its agents. *Lamb v. South Unit Jehovah's Witnesses*, 232 Minn. 259, 263, 45 N.W.2d 403, 406 (1950); Restatement (Second) of Torts § 409 (1965). The general rule, however, is riddled with exceptions. *Id.* The exceptions fall into three categories: (1) negligence of the employer in selecting, instructing or supervising the contractor; (2) nondelegable duties of the employer, arising out of some relationship toward the public or the particular plaintiff; and (3) work which is specifically, peculiarly, or "inherently" dangerous. Restatement (Second) of Torts § 409 cmt. b (1965).

The first and third exceptions to the general rule are not applicable in this case. First, we hold as a matter of law that building a retaining wall like the one in this case is not "inherently" dangerous work. Second, the trial court did not err

by finding that HSII was not negligent in hiring Artison. It is true that an employer is subject to liability for physical harm to third persons caused by its failure to employ a competent independent contractor. Restatement (Second) of Torts § 411 (1965). In this case, because Artison is apparently insolvent, Lakeview claims HSII breached its duty to hire a solvent and properly insured contractor. We disagree. The weight of authority supports not imposing liability on an employer, like HSII, for hiring an apparently competent contractor, like Artison, that turns out to be judgment proof. *See Cassano v. Aschoff*, 226 N.J.Super. 110, 543 A.2d 973, 976 (Ct.App. Div.1988); *Miltz v. Borroughs–Shelving*, 203 N.J.Super. 451, 497 A.2d 516, 524 (Ct. App.Div.1985); *see also Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941, 947 (7th Cir.1984).

Lakeview and Nina also argue HSII had a nondelegable duty to protect the public's safety. Specifically, they point to Restatement (Second) of Torts § 417 (1965), which states:

> One who employs an independent contractor to do work in a *public place* which unless carefully done involves a risk of making the physical condition of the place dangerous for the use of members of the public, is subject to liability for physical harm caused to members of the public by a negligent act or omission of the contractor which makes the physical condition of the place dangerous for their use.

(Emphasis added); *see also Brown v. Gustafson*, 264 Minn. 126, 131, 117 N.W.2d 763, 766–67 (1962) (abutting property owner, who employs an independent contractor to construct a public sidewalk, is liable for pedestrian's injury by contractor's negligence); *Lamb*, 232 Minn. at 263, 45 N.W.2d at 406 (church, who employs independent contractor to connect building with city sewer main, is liable for pedestrian's injury by contractor's failure to properly fill in trench).

Lakeview's reliance on section 417, *Brown*, and *Lamb*, is misplaced. "Public place" denotes a place where the

state or its subdivisions "maintains for the use of the public and includes not only public highways, but parks and public buildings and other similar places." Restatement (Second) of Torts § 417, cmt. b (1965). Unlike the public sidewalk in *Brown* and *Lamb,* the retaining wall in this case separated two private parking lots. Thus, this case differs from other cases which, for policy reasons, i.e. protection of the public's safety, an employer cannot shift to an independent contractor the duty of reasonable conduct.

Lakeview also claims section 422 of the Restatement (Second) of Torts requires imposing liability on HSII:

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land during the progress of the work, or

(b) after he has resumed possession of the land upon its completion.

Restatement (Second) of Torts § 422 (1965). HSII, however, was not a "possessor" of the retaining wall either when the wall was completed or when the damage occurred. When built, the wall was on Lakeview's property, not HSII's property. Further, HSII had sold the property to Sobhani and Tavakolean five years before the wall collapsed. Accordingly, section 422 does not impose vicarious liability on HSII for Artison's negligence.

## II.

Lakeview contends the trial court erred by finding HSII had not contracted with Lakeview to maintain and re-

pair the retaining wall. Existence of a contract is for determination by the trier of fact. *Knezevich v. Dress,* 399 N.W.2d 219, 220 (Minn.App.1987). A trial court's findings of fact will be reversed only if this court is left with the definite and firm conviction a mistake has been made. *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn. 1987).

The only evidence of a contract was an unsigned, undated letter, which stated HSII was responsible for maintaining the retaining wall. Alden Landreville, however, testified he did not receive the letter. Moreover, the minutes of the April 1985 Lakeview Board meeting, when the proposed letter was purportedly discussed, do not mention a letter. Further, Charles Steitz, a former Lakeview Board of Director, testified he did not know whether the Landrevilles received the letter. Finally, Darlene Tollefson, Lakeview's secretary in April 1985, did not know a letter was to be written. Under these circumstances, we are not left with a firm conviction a mistake has been made and therefore the finding is not clearly erroneous.

## III.

Nina contends the trial court erred by misconstruing the liability provisions governing HSII's sale of Blackie's to Tavakolean and Sobhani. A contract's construction and its legal effect are questions of law for the court. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn. 1979). This court need not defer to the trial court's determination of a legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Two documents are important: the November 22, 1988 asset purchase agreement and the November 22, 1988 contract for deed. The asset purchase agreement[1] con-

---

1. The Asset Purchase Agreement provides in relevant part:

[Le Rivage] and [Nina] each agree to defend, indemnify and hold each other harmless from and against any loss, cost, damage, liability, obligation, payables, claims, and expense of any kind or nature whatsoever (including,

without limitation, costs of investigation, defense and reasonable accountants' and attorneys' fees) which may be sustained or incurred by either party (a) arising out of, based upon, or by reason of (i) a breach of any of the provisions of this Agreement or any other document executed in connection with this

tains a broad indemnity provision. The contract for deed,[2] in contrast, limits HSII's liability, and, if found controlling, it would impose no duty on HSII to indemnify Tavakolean for the damage caused by the collapsed wall. We hold the trial court properly concluded the contract for deed controlled.

▇▇▇ Nina urges this court to construe the asset purchase agreement and contract for deed as one contract. While it is a long-standing rule that several instruments made at the same time, relating to the same subject, may be construed together with reference to each other, *Anderson v. Kammeier*, 262 N.W.2d 366, 370 n. 2 (Minn.1977), this rule does not govern this case for four reasons.

First, different parties contracted: the asset purchase agreement was between Le Rivage and Nina, whereas the contract for deed was between HSII as seller, and Sobhani and Tavakolean as buyers. Second, the subject matter was different: the asset purchase agreement involved the restaurant's assets while the contract for deed involved the real estate and building. Third, the purchase price for the two agreements was different. Finally, if applied, the liability and indemnity provisions of the two agreements would result in different legal effects. Under these circumstances, the parties plainly intended the two documents to be separate contracts, and they should not therefore be construed together. *See Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn.1979) (courts are to ascertain and give effect to the intent of the parties).

Hence, the contract for deed provision governs HSII's liability, and, accordingly, HSII's liability does not extend to damages caused by the wall's collapse.

## IV.

▇▇▇ The trial court concluded that Nina and Lakeview, as adjoining landowners, should share the cost of the wall's maintenance and repair, damage to the automobiles, and cleaning up Lakeview's property. Nina, as the subsequent landowner, however, had no legal duty or contract obligation to maintain or repair the retaining wall. Consequently, because there is no legal theory to hold Nina responsible for Artison's negligence, we reverse the trial court and hold that Nina has no duty to share in paying the costs incurred by the collapsed wall.

## DECISION

The trial court correctly concluded HSII had no duty to pay for damages arising from the collapsed retaining wall. The trial court erred by holding that Nina and Lakeview must share in the costs incurred by the negligently-built retaining wall. We hold Nina is not liable for damages arising from the collapsed wall.

**Affirmed in part and reversed in part.**

Agreement, or a failure to disclose information in this Agreement or in any document delivered hereunder, (ii) any indebtedness, obligation, or other liability, liquidated or unliquidated, of a party sought to be imposed on the other party, or (b) arising out, based upon, or by reason of any claim, action, or proceeding asserted or instituted against either party growing out of any matter or thing covered by such breached representations, warranties, covenants, or event occurring which is not the responsibility of the other party.

2. The contract for deed limits HSII's liability:

(a) **LIABILITY.** [HSII] shall be free from liability and claims for damages by reason of injuries occurring on or after the date of this contract to any person or persons or property while on or about the property. [Sobhani and Tavakolean] shall defend and indemnify [HSII] from all liability, loss, costs, and obligations, including reasonable attorneys' fees, on account of or arising out of any such injuries.